[Civ. No. 8306.   Third Dist.   Feb. 10, 1954.]

OLIVER STANTON MOORE, SR., et al., Respondents, v. ROY M. DAY, Appellant.

W. Coburn Cook and H. E. Gleason for Appellant.

Zeff and Halley, William Zeff and E. Dean Price for Respondents.

SCHOTTKY, J.—Respondents commenced an action against appellant to recover damages for breach of contract. Their amended complaint alleged in substance that on or about March 1, 1948, the parties entered into an oral contract whereby appellant agreed to purchase 83,670 pounds of beans from respondents at 17½ cents per pound; that on numerous occasions thereafter appellant stated that he would take the

beans at such price but that he wished to defer delivery; that on August 17, 1948, appellant specifically told respondents that he would accept the beans and pay 17½ cents per pound therefor on September 10, 1948; that respondents delivered the beans to appellant on August 17, 1948, by giving written authorization therefor to the warehouse in which they were stored; that on September 10, 1948, appellant stated to respondents that he would take the beans but would pay no more than 9 cents per pound; that from March 1 to September 10, 1948, appellant repeatedly sent word to respondents through one Jack Gilligan, who acted as a broker in the transaction, that they need not worry about his delay in taking the beans and could rely on his agreement to take them at 17½ cents per pound; that as a result of said representations and their reliance thereon, respondents, to their damage, made no effort to sell the beans elsewhere prior to September 10, 1948, at which date and at all times thereafter the market price of the beans did not exceed 6 cents per pound; and that respondents were further damaged by having to pay $356.50 for fumigation and warehousing charges.

Appellant's answer put in issue the material allegations of the amended complaint and interposed the affirmative defense of the statute of frauds on the ground that the alleged contract for a sale of goods of a value of more than $500 was not in writing. At the trial the issues raised by the pleadings were enlarged so as to include the further defense that if any contract were made by Jack Gilligan as agent of appellant, it was void as it was not authorized in writing as required by section 2309 of the Civil Code.

The trial court found generally that the allegations of the amended complaint were true; that Jack Gilligan was the duly authorized agent of appellant; that all his acts in connection with the purchase and delivery of the beans were within the scope of his agency and authorized by appellant; and that appellant was estopped to avail himself of the defense of the statute of frauds. Judgment was rendered in favor of respondents, awarding them $356.50 for fumigation and warehouse charges and damages of $8,676.89, the amount of the admitted difference between the contract price and sums realized from subsequent sales of a portion of the beans.

Disregarding conflicts in the evidence, which the trial court has resolved in favor of respondents, the facts are that in 1948 and for many years prior thereto appellant had been a broker and merchant and had previously purchased beans

on a commission basis through one Jack Gilligan. The custom was that appellant would advise Gilligan of how much he would pay for a certain quantity of beans and if the terms were satisfactory to the producer, Gilligan would obtain a written contract of sale and purchase. It was the understanding and custom in the trade that such offers were not continuing and if not accepted immediately the broker would refuse to buy the beans if it would be disadvantageous to him due to a fluctuation in market prices. Respondents had raised and sold beans for a number of years and were fully familiar with the practice of executing a written contract covering transactions entered into with a broker through his agent. In 1946 or 1947, when Gilligan was purchasing exclusively on the account of appellant, respondents sold some of their beans to him. In the fall of 1947 Gilligan brought a sample of respondents' crop to appellant and thereafter discussed his possible purchase of same. In late February, 1948, appellant advised Gilligan that he would pay respondents 17½ cents per pound for 83,670 pounds of their beans. That evening or the next day Gilligan communicated appellant's offer to respondents who accepted it on the following day and Gilligan so advised appellant. On numerous occasions thereafter appellant stated to Gilligan that he intended to take respondents' beans at 17½ cents per pound but that he wished to defer delivery due to an overload and shipping difficulties. These reassurances were relayed to respondents by Gilligan. However, in June or July when Gilligan again made inquiry as to the matter, appellant stated: "I never did want those Moore beans, your salesmanship sold those beans to me." Whereupon, Gilligan informed respondents that he thought appellant was backing out. Respondents then began to fear the deal was "shaky" and endeavored to personally contact the appellant. The respondents and appellant met for the first time in the early part of August at which time appellant assured them that he would take the beans at 17½ cents per pound, and when pressed for a written contract said he would send one by Gilligan as he had been handling the matter. Respondents admit they had not theretofore requested a written contract as they considered they did not need one as the beans had been sold to appellant as of March 1, 1948. On September 10th appellant refused to pay more than 9 cents per pound, which respondents refused to accept. Thereafter they were able to sell only a portion of the beans and at less than 9 cents per pound, and

incurred storage and warehouse charges in the amount of $356.50.

Appellant urges a number of contentions for a reversal of the judgment, the principal of which is that the evidence does not support the judgment. It is appellant's position that the transaction was within the statute of frauds, and that there was no competent evidence either that Gilligan was an authorized agent of appellant or that any enforceable contract for the purchase of the beans was ever entered into. Respondents concede here, as they did at the trial, that there was no written agreement for the purchase of the beans, but it is respondents' contention that the conduct of appellant was such that he is estopped from setting up the statute of frauds. The trial court agreed with this contention of respondents and stated in its memorandum opinion:

"A complete review of the evidence discloses that the circumstances surrounding this entire transaction clearly indicates that the words and the conduct of the defendant amounted to an inducement that a written contract would be waived, and that to assert the invalidity of the contract, would constitute a fraud upon the plaintiff. The acts and the conduct of the defendant clearly indicate that he did not intend to avail himself of the statute. To permit him now to set up the Statute of Frauds as a defense would allow him to use the Statute as a sword and not as a shield."

There can be no doubt that in a proper case a person may be estopped from setting up the statute of frauds as a defense. In one of the leading California cases upon this question, *Seymour* v. *Oelrichs,* 156 Cal. 782, it is said at pages 794-795 [106 P. 88, 134 Am.St.Rep. 154]:

"The right of courts of equity to hold a person estopped to assert the statute of frauds, where such assertion would amount to practicing a fraud, cannot be disputed. It is based upon the principle 'thoroughly established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme.' (2 Pomeroy's Equity Jurisprudence, sec. 921.) It was said in *Glass* v. *Hulbert,* 102 Mass. 24, 35 [3 Am.Rep. 418]: 'The fraud most commonly treated as taking an agreement out of the statute of frauds is that which consists in setting up the statute against its enforcement, after the other

party has been induced to make expenditures, or a change of situation in regard to the subject-matter of the agreement, or upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss. In such case, the party is held, by force of his acts or silent acquiescence, which have misled the other to his harm, to be estopped from setting up the statute of frauds.' This statement has been accepted as setting forth a plain and satisfactory ground for equitable jurisdiction, together with a clear indication of the proper limitation of its exercise. (See 5 Browne on Statute of Frauds, sec. 457a.) In the section last cited, Mr. Browne says: 'A plaintiff . . . must be able to show clearly . . . not only the terms of the contract, but also such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, to so far alter his position as to incur an unjust and unconscientious injury and loss, in case the defendant is permitted after all to rely upon the statutory defense. After proof of this, the court may well be justified in using its undoubted power, in cases of equitable estoppel, to refuse to listen to a defendant seeking to deny the truth of his own representations previously made.'

"We can see no good reason for limiting the operation of this equitable doctrine to any particular class of contracts included within the statute of frauds, provided always the essential elements of an estoppel are present, or for saying otherwise than as is intimated by Mr. Pomeroy in the words already quoted, viz., that it applies 'in every transaction where the statute is invoked.' It is a general equitable principle, a part of the broader equitable doctrine stated in *Dickerson* v. *Colgrove,* 100 U.S. [578] 580 [25 L.Ed. 618], and quoted therefrom in *Carpy* v. *Dowdell,* 115 Cal. 687 [47 Pac. 695], as follows: 'The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he

acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both.' "

Disregarding, as we must, all conflicts in the evidence, it appears from the evidence and the inferences that may reasonably be drawn therefrom that Gilligan was a buyer who had been buying beans for appellant; that late in February he had made an offer of 17½ cents per pound for respondents' beans on behalf of appellant; that respondents accepted the offer, which acceptance was communicated to appellant by Gilligan; that appellant was to take delivery of the beans in two weeks, but from time to time sent word to respondents through Gilligan postponing the acceptance of the beans but assuring respondents that he would complete the purchase; that about July 1st, Gilligan urged appellant to complete the transaction and that appellant then for the first time indicated that he did not want the beans; that Gilligan then told respondents what appellant had said and one of respondents endeavored to see appellant and did see him about August 1st at which time appellant assured respondents he would keep his agreement to buy the beans for 17½ cents and would send a written contract by Gilligan; that one of respondents saw appellant about August 17th and asked him to set a date for the delivery of the beans and the completion of the sale, and appellant set the date of September 10th; that on September 10th appellant for the first time told respondents that he would not go through with the purchase at 17½ cents but would pay only 9 cents per pound, which offer was refused by respondents; that at all times since Gilligan first communicated to appellant the acceptance by respondents of appellant's offer of 17½ cents per pound for the beans respondents considered the beans sold to appellant and relied upon appellant's continued assurances that he would complete the transaction at the agreed price, and made no effort to market said beans; that the market broke sharply not long before appellant definitely informed respondents that he would only pay 9 cents per pound for the beans; that the beans were thereafter disposed of by respondents at the best prices they could obtain but at considerably less than 17½ cents per pound.

Applying the well-settled principles hereinbefore set forth to the factual situation in the instant case we believe that the court's finding that appellant was estopped from availing himself of the statute of frauds is supported by the evidence and the law. The court was fully justified in concluding

that appellant had made the offer for the beans and knew that respondents had accepted it, that respondents continued to rely on appellant's renewed assurances that he would complete the transaction from about March 1st to September 10th; that relying upon appellant's assurances respondents refrained from selling the beans to others and altered their position to their damage and loss. Under such circumstances the court had a right to believe that appellant was attempting to use the statute of frauds as a sword and not as a shield.

■ Appellant contends that the court erred in permitting oral evidence to be received tending to prove that Jack Gilligan was an agent of appellant and also that the finding that Gilligan was the duly authorized agent of appellant and that all of his acts with reference to the purchaser of the beans were within the scope of his agency are not supported by the evidence. If the only issue in the case was whether or not the statute of frauds had been complied with there would be considerable merit in these contentions of appellant. However, upon the issue of estoppel, which was clearly in the case, the evidence was admissible as bearing upon the connection and relationship between Gilligan and appellant. The court determined the case upon the issue of estoppel and, as related to such an issue, the finding is supported by the evidence. There can be no question as to the fact that Gilligan was sent by appellant to buy respondents' beans and that he carried messages back and forth between appellant and respondents, and in that sense he was an agent so far as the issue of estoppel is concerned.

Appellant contends, also, that the trial court erred in not making findings of fact upon appellant's affirmative defense of the statute of frauds. This contention is without merit. Respondents' amended complaint conceded that the contract in question was an oral contract. Respondents then stated facts which they alleged estopped the appellant to assert the unenforceability of the oral contract. Appellant answered, setting up a general denial and the statute of frauds as a defense. The trial court found that all of the allegations contained in these paragraphs were true and further specifically found that the "defendant, Roy M. Day, is estopped to avail himself of the Statute of Frauds as a defense to the plaintiffs' action herein."

■ It is well settled in California that "it is not necessary to make specific findings as to each of several material

issues where the findings, taken as a whole, or construed together, clearly show that they include the court's conclusion upon the material issues. (*Bowers* v. *Union Trust Co.,* 117 Cal.App. 259, 264, 265 [3 P.2d 614].)'' (*Petersen* v. *Murphy,* 59 Cal.App.2d 528 [139 P.2d 49].) ▮ And further, that: ''If the findings made necessarily negative the allegations of defendants' answer as to which specific findings are not made, the findings are sufficient.'' (*Petersen* v. *Murphy, supra,* at pp. 533, 534.)

The remaining contentions of appellant relate mainly to the sufficiency of the evidence, and are to a large extent an argument which only emphasizes the conflict in the evidence. We have studied the record carefully and are satisfied that the findings of the court as to damages and other issues are fully supported by the evidence. The record shows that following appellant's final refusal to buy the beans at the agreed price respondents endeavored to and did sell them at the best price obtainable. We are not impressed with appellant's argument that respondents should have accepted appellant's offer of 9 cents per pound on September 10th and have thus reduced the amount of damages, for respondents could hardly have accepted this offer of appellant without waiving what they considered their rights under their prior agreement with appellant.

No other points raised require discussion.

The judgment is affirmed.

Peek, J., and Paulsen, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.