[Civ. No. 22230. First Dist., Div. One. Sept. 16, 1966.]

IRVING TIER COMPANY, INC., Plaintiff and Respondent, v. JOHN L. GRIFFIN et al., Defendants and Appellants.

(Consolidated Cases.)

854

Arnold Laub and Marlow Gregers for Defendants and Appellants.

MacDonald, Brunsell & Walters and William Walters for Plaintiff and Respondent.

MOLINARI, J.—This appeal involves two separate actions which were consolidated for trial. In each plaintiff sought damages for breach of contract involving the alleged sale by plaintiff to defendants of various items of convalescent hospital equipment and furniture. The first, action 324854, was predicated upon an alleged written contract; the second, action 326574, upon three alleged oral contracts. From the judgment entered in favor of plaintiff as to the action upon the written contract and as to two of the three causes of action in the action upon the oral contracts defendants appeal,

contending that (1) as to the two oral contracts upon which recovery was allowed the trial court erred in finding that the statute of frauds was not a valid defense and that defendants were estopped to deny these contracts; and (2) the trial court erred in applying former Civil Code section 1784, subdivision (4), as the measure of damages for defendants' breach of each of the contracts upon which recovery was allowed.

## Pleadings and Findings

In its first amended complaint in action 324854 plaintiff set out one cause of action based on a purported written conditional sales contract between plaintiff and defendants by the terms of which defendants agreed to purchase certain convalescent hospital furniture and equipment from plaintiff for a total purchase price of $20,444.42. Plaintiff then alleged that, after plaintiff and defendants subsequently agreed to delete one of the items from the contract thereby reducing the total contract price to $17,693.62, plaintiff ordered and prepared the remaining items included in the contract and tendered them to defendants, who refused to accept these goods and failed to perform their duty under the contract. Accordingly, plaintiff prayed for damages in the amount of $17,693.62 and for reasonable attorneys' fees, as provided for in the contract, in the amount of $5,000. Defendants' answer to this complaint denied that they ever entered into a contract with plaintiff and alleged that the document upon which plaintiff sought recovery was merely a memorandum which, by agreement of the parties, was to form the basis for a conditional sales agreement only in the event that the parties could subsequently reach an agreement as to various terms of the sale.

In action 326574 plaintiff, by means of three separately pleaded causes of action, alleged that plaintiff and defendants entered into three oral contracts by which defendants agreed to purchase various items of convalescent hospital equipment and furniture from plaintiff;[1] that plaintiff ordered and prepared the items included in the subject contracts, but that defendants refused to perform their duty under the contracts; and that since defendants had led plaintiff to believe that they intended to rely on these three contracts as binding and valid agreements, defendants were estopped to deny the validity of the contracts. On the basis of these allegations plaintiff prayed for damages based on the total contract price of the goods

[1]The first cause referred to certain dayroom furniture; the second to a sterilizer; and the third to certain laundry equipment.

which were the subject matter of the three alleged contracts. Defendants, by their answer to this complaint, denied the alleged oral contracts, denied that they were estopped to deny the validity of the oral contracts, and, as a separate and affirmative defense, pleaded that plaintiff's recovery on these alleged contracts was barred by the statute of frauds.

Following trial, the court below entered its findings of fact and conclusions of law. In action 324854 the court found essentially according to the ultimate facts pleaded in the complaint, i.e., that the parties had entered into a written agreement for the purchase of the items therein listed, that plaintiff had tendered delivery thereof to defendants who refused to accept and pay therefor, and that as a result of defendants' breach of this contract, plaintiff suffered damages in the amount of $2,492.05, this sum representing plaintiff's total loss of anticipated profits on all of the items of the sale transaction which were not stock items.[2]

As to action 326574, the trial court found that defendants had entered into three oral contracts to purchase various items of convalescent hospital furniture and equipment; that "Plaintiff relied upon the oral agreement[s] of the defendants to purchase these items and in reliance changed its position by the rendering of services, ordering of the merchandise, payment of freight and incurring the obligation to pay its suppliers for this merchandise within a certain specific time after delivery to plaintiff's warehouse"; that although plaintiff tendered delivery of the items to defendants, defendants refused to accept the goods and indicated that they would not be bound by the oral contracts; that as to the two contracts involving the sale of furniture and laundry equipment, which contracts were the subjects of the first and third causes of action, respectively, of said complaint, the items which defendants agreed to purchase thereunder were not stock items but were custom made for defendants and therefore had no ready market, so that as to these two contracts defendants' breach caused plaintiff damages in the amount of $1,487.73 loss of anticipated profits (see fn. 2) ;[3] and that as to the third oral

---

[2]During the course of trial plaintiff was allowed to amend its complaints in both actions in order to change the amount of damages prayed for to its anticipated profits rather than the contract price of the various items.

[3]Only one item, namely, a pineapple lamp, was omitted from the trial court's listing of the items described in the first cause of action. As indicated by the trial court's memorandum opinion, the reason for the omission was that this item was cancelled by mutual consent of the parties.

contract involving the sterilizer, which contract was the subject of the second cause of action of said complaint, no damages resulted from defendants' refusal to accept this item since it was not custom made but was a standard model with a ready market for resale. Finally, as to the two oral and the one written contract on which the court allowed plaintiff to recover, the court specifically found that substantially all of the goods which defendants had agreed to purchase under these contracts were ultimately resold by plaintiff prior to trial at substantially the same price which defendants had agreed to pay, but that since plaintiff's right to recover damages from defendants, measured by the difference between the cost to plaintiff of the items ordered and the sale price to defendants, arose immediately upon defendants' repudiation of the various contracts and since plaintiff was not required to mitigate its damages, the court had refused to consider the resale of these items as mitigation of plaintiff's damages.

From these findings the trial court, by way of conclusions of law, concluded that based upon plaintiff's loss of profits it was entitled to judgment against defendants in the sums of $2,492.05 and $1,487.73 in actions 324854 and 326574, respectively; that the measure of damages in each case was fixed by Civil Code section 1784, subdivision (4); and that plaintiff's damages became fixed upon defendants' refusal to proceed with the contracts.

### The Statute of Frauds

As already indicated, the three contracts upon which recovery was sought in action 326574 were oral. In addition, according to the allegations in this complaint, each of the three contracts was for the sale of goods of a value in excess of $500. Accordingly, as recognized by plaintiff, recovery upon such contracts would be barred by former sections 1624a and 1724 of the Civil Code and former section 1973a of the Code of Civil Procedure, which, as in effect at the time of the transactions involved in the instant case,[4] required such contracts to be in writing. However, to avoid the bar of the statute of frauds, plaintiff further pleaded that defendants were estopped to deny these oral contracts. As is apparent from the findings of fact with respect to the two oral contracts upon which plaintiff prevailed, the trial court found that defendants were estopped to deny these contracts. It is with these

---

[4]These sections were repealed with the enactment of the Commercial Code.

findings of fact specifically and with the trial court's determination as to the applicability of the estoppel doctrine generally that defendants take issue on appeal.

The concept of estoppel to assert the statute of frauds and the requisites for applying this doctrine are discussed in the case of *Monarco* v. *Lo Greco*, 35 Cal.2d 621, 623-624 [220 P.2d 737], as follows: "The doctrine of estoppel to assert the statute of frauds has been consistently applied by the courts of this state to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances. Such fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract [citations], or in the unjust enrichment that would result if a party who has received the benefits of the other's performance were allowed to rely upon the statute. [Citations.] In many cases both elements are present. Thus not only may one party have so seriously changed his position in reliance upon, or in performance of, the contract that he would suffer an unconscionable injury if it were not enforced, but the other may have reaped the benefits of the contract so that he would be unjustly enriched if he could escape its obligations. [Citations.]"

Although there are numerous cases in California which have discussed the applicability of the doctrine of estoppel to assert the statute of frauds, we have found only a handful which did so in the context of a contract involving the sale of goods. In *Booth* v. *A. Levy & J. Zentner Co.*, 21 Cal.App. 427 [131 P. 1062], the plaintiff sought to recover damages for the defendant's refusal to accept and pay for a load of cranberries which the plaintiff's assignor had allegedly sold to the defendant. In response to the defendant's contention that the memorandum signed by the parties was not sufficient to take the transaction out of the statute of frauds, the plaintiff claimed that the defendant was estopped to rely upon the statute of frauds. The facts upon which the plaintiff relied in making this contention were that the plaintiff's assignor had shipped the cranberries to the defendant and upon the defendant's refusal to accept and pay for the cranberries, the assignor had sold them to a third party at a loss. In holding that the defendant was not estopped to assert the statute of frauds, the appellate court stated as follows: "We see nothing in the record to support the contention that defendant is estopped to rely upon the statute of frauds. It is a plain case where the seller chose

to ship goods to a distant buyer who was bound by an oral agreement only. To hold that under such circumstances the buyer who refuses to accept the goods is estopped to rely upon the statute would be to practically abrogate the statute of frauds. [Citation.]'' (P. 431.)

In *Little* v. *Union Oil Co.*, 73 Cal.App. 612 [238 P. 1066], the appellate court affirmed a judgment of the trial court sustaining the defendant's demurrer to the plaintiff's complaint, which alleged as follows: that the plaintiff and the defendant entered into an oral agreement by which the latter agreed to deliver gasoline to the plaintiff for one year; that in reliance upon this agreement the plaintiff contracted with a third party to sell to it the gasoline supplied by the defendant; that the defendant subsequently refused to perform its contract with the plaintiff; and that due to the defendant's breach of the subject contract the plaintiff was unable to perform his contract with the third party, thereby suffering damages based upon his loss of profits. In holding that such allegations did not call for the application of the estoppel doctrine and that the plaintiff's complaint therefore failed to state a cause of action, the appellate court stated as follows: ''Appellant's position, in view of the facts pleaded, is that of one who, while he has relied on representations which, the other elements being present, would result in an estoppel, has not changed his position to his injury; but, the general market conditions being such that a resale at a profit is certain, he contends that to permit the seller to assert the invalidity of the oral agreement would result in a change of his otherwise advantageous position in the market and a consequent loss. The result of such application of the doctrine would be its use as an instrument of gain or profit while its object is protective and limited to saving harmless or making whole the person in whose favor it arises [citations].'' (Pp. 620-621.)

The case of *Goldstein* v. *McNeil*, 122 Cal.App.2d 608 [265 P.2d 113], is one in which the doctrine of estoppel was successfully applied under the following factual circumstances: The plaintiff, on July 26, 1950, under an oral contract, sold 14 used cars to the defendants for $29,450, free on board Shreveport, Louisiana, the automobiles to be delivered to the defendants' place of business in San Francisco. At the request of the defendants, the plaintiff paid $210 for caravan fees and had the automobiles shipped to California. However, when the defendants inspected the automobiles, which had reached Fresno in caravan, the defendants refused

to accept the cars or pay for them. The plaintiff thereafter resold the automobiles for $26,400 and in addition incurred $815.22 expenses on the resale, so that the plaintiff's total loss was $3,865.22. The plaintiff then brought an action to recover the amount of his damages under the oral contract, asserting that the defendants were estopped to deny the contract on the theory that the plaintiff had changed his position to his detriment in reliance on the contract and that he would suffer an unconscionable loss if the contract were considered to be invalid. In affirming the trial court's judgment in favor of the plaintiff, the appellate court, stating the rule that "To cause an estoppel there must be unusual circumstances which give the injury an unjust and unconscionable character" (p. 611), and noting that estoppel is a question for the trier of fact, held that the trial court could conclude that the defendants were estopped to deny the contract from evidence that the plaintiff would not have transported the cars from Louisiana prior to having a purchaser for them and that because of the performance of the contract the plaintiff missed the very high market existing at the time of the contract and was thus caught in a sharp slump due to the outbreak of the Korean conflict.[5]

In *Moore* v. *Day*, 123 Cal.App.2d 134 [266 P.2d 51], one of the cases upon which the trial court in the instant case relied, the following facts were held to justify application of the estoppel doctrine: The plaintiffs and the defendant entered into an oral contract in February by which the defendant agreed to purchase 83,670 pounds of beans from the plaintiffs at 17½ cents per pound. On numerous occasions thereafter the defendant stated that he would take the beans at such price but wished to defer delivery. As a result of the defendant's representations and the plaintiffs' reliance thereon, the latter made no efforts to sell the beans elsewhere prior to September 10, when the defendant first told the plaintiffs that he would not purchase the beans at the agreed price. Thereafter the plaintiffs sold the beans elsewhere at the best available prices, which prices were considerably less than 17½ cents per pound, and in addition the plaintiffs incurred fumigating and warehousing costs. The plaintiffs then brought an action against the defendant to recover damages for the latter's refusal to perform the subject contract. Both the trial court and the

---

[5]No petition for a hearing before the Supreme Court was presented in that case the rationale of which has been criticized in 27 So.Cal.L.Rev. 471 and 53 Cal.L.Rev. 590, 605-606.

appellate court concluded that the defendant was estopped to deny the oral contract on the basis that the plaintiffs, in relying on the defendant's assurances that he would purchase the beans, had refrained from selling the beans to others and had thereby altered their position to their damage and loss.

Finally we note the case of *Mosekian* v. *Davis Canning Co.*, 229 Cal.App.2d 118 [40 Cal.Rptr. 157], where a judgment for damages for breach of an oral contract was affirmed upon the principle of estoppel. In that case the facts were as follows: The plaintiff and the defendants entered into an oral contract by which the latter agreed to purchase the plaintiff's crop of peaches under an " 'open contract' " (p. 120), pursuant to the custom in the peach-canning industry whereby canners contracted to buy crops before maturity, agreeing to pay whatever price per ton the cannery association thereafter set. Relying upon this contract the plaintiff sought no other buyer for his crop. When the peaches ripened the defendants repudiated the contract, so that the plaintiff, being unable to dispose of his crop to a cannery, was forced to sell it at a " 'dry yard.' " (P. 120.) The trial court found that the plaintiff reasonably relied upon the agreements and representations of the defendants and was induced thereby to sell his crop of peaches to the defendants and to hold this crop for the use and benefit of the defendants and seek no other buyers for the crop until after the defendants repudiated the contract, by which date a portion of the crop had fallen due to overripening and a substantial part of the plaintiff's peaches had become too ripe for sale to fresh fruit packers. Accordingly, the trial court concluded that the plaintiff was entitled to damages measured by the difference between the canning price and the dry yard price. The appellate court affirmed this judgment as to defendant Davis Canning Company, commenting as to the estoppel issue solely that "Plaintiff's change of position brings the case within the rationale of the *Monarco* case." (P. 124.)

■ Before proceeding to discuss the instant case in the light of the foregoing cases it should be pointed out that whether a contracting party should be estopped to assert the statute of frauds is usually a question of fact the determination of which, if supported by substantial evidence, will not be disturbed on appeal unless the contrary conclusion is the only one to be reasonably drawn from the facts. (*Albers* v. *County of Los Angeles*, 62 Cal.2d 250, 266 [42 Cal.Rptr. 89, 398 P.2d 129]; *Henry* v. *City of Los Angeles*, 201 Cal.App.2d 299, 306

[20 Cal.Rptr. 440]; *People* v. *Watkins,* 175 Cal.App.2d 182, 185 [345 P.2d 960]; *Goldstein* v. *McNeil, supra,* 122 Cal.App. 2d 608, 612.)

Turning now to the facts of the instant case in order to determine if the trial court correctly concluded that defendants were estopped to deny the two oral contracts upon which defendants were found to be liable to plaintiff in damages, we first describe in general terms the nature and manner of operation of plaintiff's business as revealed by the record. Plaintiff, a closed California corporation, is in the business of supplying equipment and furniture to convalescent hospitals and rest homes. In this capacity it acts as a "middleman" or wholesale buyer and seller, taking orders from such hospital and rest home operators, purchasing items from manufacturers to fill these orders, and selling the ordered items to the hospital or rest home. In this operation, plaintiff's profits are based on the difference between its purchase price and its selling price.

With regard to plaintiff's activities in conjunction with the oral contract involving the various items of furniture, the record reveals that on April 20, 1962 Elliott Silver, one of plaintiff's salesmen, accompanied defendants to the Merchandise Mart in San Francisco to look at various items of furniture which defendants would need to buy for the Aloha Convalescent Hospital, which was at the time being built in Hayward and which upon completion would be operated by defendants as lessees. On the same day, plaintiff placed orders with the manufacturers of the following items: one three-piece sectional, one turquoise chair and matching ottoman, two persimmon chairs, one pineapple lamp, four dining tables, and eight tangerine chairs. On May 24, 1962, after the order for the lamp had been cancelled by mutual consent and after plaintiff had notified the two manufacturers involved that the delivery date should be postponed, defendants, by their attorney, sent plaintiff a letter indicating that they did not recognize as binding any agreements or contracts which plaintiff and defendants had entered into concerning defendants' purchase of furniture from plaintiff and that plaintiff would take sole responsibility for any further action on its part to obtain furniture for defendants. Plaintiff did not cancel the order for these furniture items but, upon receiving them from the manufacturer, tendered delivery to defendants who refused to accept or pay for them.

Concerning plaintiff's subsequent disposal of the subject furniture the record reveals the following: The sectional was

sold on March 2, 1963 for $612, this price being $7 less than the price which defendants had agreed to pay; the two persimmon chairs were sold during trial at approximately the same price as defendants had agreed to pay; four of the eight tangerine chairs were sold in January and April 1963 at approximately the contract price; and the remaining items, namely a turquoise chair and ottoman, four dining tables, and four tangerine chairs remained unsold as of the date of trial.[6]

Turning to the oral contract by which defendants allegedly agreed to purchase various items of laundry equipment, we note that plaintiff placed the order for this equipment with the manufacturer on March 26, 1962; and that prior to this date a representative of the manufacturer had contacted defendants for the purpose of supplying them with catalogs, advising them as to the best equipment for their needs, and furnishing them with plans for the plumbing and mechanical requirements of the laundry equipment and its installation. As to plaintiff's course of conduct following defendants' repudiation of this contract in May 1962, this repudiation also being contained in the letter which defendants' attorney wrote to plaintiff, the record is without conflict that the laundry equipment was not delivered to plaintiff, but that plaintiff cancelled its order with the manufacturer and in doing so was able to have the cancellation penalty waived.[7]

In light of these facts we proceed to a determination of whether the trial court correctly concluded that defendants were estopped to deny the validity of the respective oral contracts. Initially we note that although the *Monarco* case sets up two alternative theories under which the doctrine of estoppel may be applied, namely, unjust enrichment and unconscionable injury, clearly the facts of the instant case reveal no unjust enrichment to the defendants, who received none of the items which were the subject matter of the alleged oral contracts. Accordingly, if the estoppel doctrine is to be applied in the instant case its application must be predicated upon the fact that plaintiff would suffer unconscionable injury if

---

[6]Although the uncontroverted testimony was that plaintiff had not been able to sell all of the furniture items as of the time of trial, the trial court found that ''substantially'' all of the furniture items were ultimately resold by plaintiff.

[7]In spite of the undisputed evidence that the order for the laundry equipment was cancelled without this equipment being delivered to plaintiff, the trial court found that it was delivered to plaintiff and tendered to defendants, and that, upon defendants' refusal to accept this equipment, plaintiff resold substantially all of it at approximately the same price which defendants had agreed to pay.

defendants were allowed to successfully assert the statute of frauds and thereby prevent enforcement of the subject contracts.

 Adverting first to the contract involving the sale of laundry equipment, we are of the opinion that no unconscionable injury would be incurred by plaintiff if it were prevented from enforcing this contract. We are persuaded to this conclusion as the only one that can be reasonably drawn from the facts on the basis that upon defendants' repudiation of this contract plaintiff was able to, and did, cancel its order for this equipment, and in doing so was able to have the cancellation penalty waived, thus putting plaintiff in the same position as it was when it originally placed the order. Plaintiff argues that the unconscionable injury which it suffered in connection with this contract results from the following activities which it performed in relation to this contract: ordering the equipment which was custom made for defendants and which, by the nature of plaintiff's operation, plaintiff did not have in stock; obligating itself to pay for the equipment; scheduling delivery of the equipment to coincide with the opening of defendants' hospital; and furnishing defendants with expert advice as to the installation of the equipment. As to the fact that plaintiff furnished expert advice to defendants in connection with the laundry equipment, the record reveals that this advice was furnished to defendants *before* March 26, 1962, the date of the alleged contract, and that it was furnished not by plaintiff but by a representative of the manufacturer. Thus it is clear that plaintiff suffered no injury as a result of furnishing expert advice to defendants and that, in any event, whatever injury was in fact suffered as a result of these activities was not suffered in reliance upon the contract, which had not come into existence at the time the advice was furnished to defendants. And as to the other activities, while it is undisputed that plaintiff did perform such activities, it nevertheless cannot be successfully argued that because of their performance plaintiff would suffer an unconscionable injury if it were prevented from enforcing the contract against defendants. As a result of defendants' repudiation of the oral contract and plaintiff's cancellation of the order for the laundry equipment, the only injury which plaintiff would suffer if defendants were allowed to assert the statute of frauds as a defense to the enforcement of the contract would be the loss of profits which plaintiff incurred as a result of defendants' refusal to proceed with the contract. Such a loss is insufficient to work an estoppel in the

instant case because plaintiff did not, in view of its successful cancellation of the order, so seriously change its position in reliance upon the contract as to warrant the conclusion that it would be unconscionable for defendants to assert the statute of frauds. As recognized in the *Little* case, the estoppel doctrine is not properly invoked where its invocation is intended as an "instrument of gain or profit. . . ." (P. 621 of 73 Cal. App.)

We note, moreover, with respect to the oral contract involving the laundry equipment that during the trial counsel for both parties and the court made statements to the effect that since the order relating to this equipment had been cancelled, evidence as to plaintiff's loss of profits on this contract was irrelevant. Furthermore, the record discloses that because the order had been cancelled the trial court granted defendants' motion to strike the testimony of Irving Tier, plaintiff's president, relating to plaintiff's loss of profits on this contract. The strong suggestion in the record that the trial court concluded that the subject order was cancelled by mutual consent is inconsistent with the trial court's ultimate decision that plaintiff have damages for defendants' breach of this oral contract based upon plaintiff's loss of profits. In any event, as we have indicated, plaintiff was not entitled to damages upon this contract because the contract was barred by the statute of frauds.

Turning next to the oral contract by which defendants agreed to purchase certain items of furniture we first note that as the basis for unconscionable injury to plaintiff the trial court found that plaintiff, in reliance upon this agreement, changed its position "by the rendering of services, ordering of the merchandise, payment of freight and incurring the obligation to pay its suppliers for this merchandise within a certain specific time after delivery to plaintiff's warehouse." We are satisfied that these activities in and of themselves, either separately or in the aggregate, do not suffice to work an estoppel in view of the rationale of the *Booth* and *Little* cases since they amount to no more than activities of the ordinary seller who chooses for a profit to sell to a buyer goods which are manufactured at some distance from the place of delivery. The trial court did find, however, that the items of furniture which were the subject of this contract "were custom made for defendants' place of business, were not stock items and had no ready market." Such a finding, if supported by the evidence, would, when coupled with the finding as to the activities above

mentioned, suffice to work an estoppel within the rationale of the *Moore* and *Mosekian* cases. We note, moreover, that in *Little* the appellate court specifically pointed out that the impelling circumstance which called for the rejection of the application of the doctrine of estoppel was the fact that the general market conditions were such that a resale at a profit was certain.

■ There was evidence in the instant case that the subject items of furniture were not "stock items" but were made to order as selected by defendants; that because of the many different sizes, styles, fabrics and color variations, and the different accessory parts that could be put on this furniture, each order was treated as a "custom order"; and that these items were not for sale on the general market. Accordingly, the inference was warranted from this evidence that if plaintiff were prevented from enforcing this contract it would be compelled to absorb the cost of the items which it could not resell. The unavailability of a ready market for these items is disclosed, moreover, by the fact that plaintiff was required to resell these items in a piecemeal manner over a considerable period of time, and that even by the time of trial, plaintiff had been able to resell only some of the items. In the light of this evidence, we cannot say that the trial court's determination that defendants were estopped to deny the validity of the oral contract involving these items of furniture is not supported by substantial evidence.

### The Measure of Damages

Defendants' second contention on this appeal is that the trial court erred in determining that the appropriate measure of damages to be applied in the instant case was that provided for in Civil Code section 1784, subdivision (4),[8] and in allow-

---

[8]Unless otherwise indicated, all statutory references are to the Civ. Code. Specifically with regard to § 1784, although this section was repealed with the enactment of the Com. Code, it was in effect at the time of the transaction involved in the instant case. This section provided as follows: "(1) Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for nonacceptance. (2) The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract. (3) Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept. (4) If, while labor or expense of material amount are necessary on the part of the seller to enable him to fulfill his obligations

ing plaintiff to recover the loss of anticipated profits which it incurred by reason of defendants' breach of the various contracts involved. Rather, argue defendants, the court, in awarding damages to plaintiff, should have applied section 1784, subdivision (3), (see fn. 8) which entitled a seller to damages based upon the difference between the contract price and the market price on the date of breach.

We are of the opinion that the trial court properly determined that plaintiff's damages should be based upon its loss of anticipated profits rather than upon the difference between the contract price and the market price of the goods on the date of breach. This latter measure of damages, which is provided for in section 1784, subdivision (3), namely, the difference between the contract price and market price, may be applied, according to the specific language of section 1784, subdivision (3), only "Where there is an available market for the goods in question" and "in the absence of special circumstances, showing proximate damage of a greater amount. . . ." (*Los Angeles Coin-O-Matic Laundries* v. *Harow*, 195 Cal.App.2d 324, 332 [15 Cal.Rptr. 693].) Limiting ourselves for the present to the latter criterion, we are of the opinion that the facts in the instant case reveal "special circumstances, showing proximate damage of a greater amount. . . ." These special circumstances, we believe, consist of the fact that the seller in the instant case was a "middleman," who bought goods from manufacturers and sold them to convalescent hospitals and rest homes, and whose profits were based on the difference between its purchase price and its selling price.

There is ample authority to the effect that an award of damages based upon the difference between the contract price and the market price does not adequately compensate a middleman upon his buyer's repudiation of an agreement to purchase goods from him, but that the proper measure of damages in such a case is the dealer's anticipated profit. The rationale supportive of this principle is that "The rule that the seller's damages are measured by the contract price minus

under the contract to sell or the sale, the buyer repudiates the contract or the sale, or notifies the seller to proceed no further therewith, the buyer shall be liable to the seller for no greater damages than the seller would have suffered if he did nothing towards carrying out the contract or the sale after receiving notice of the buyer's repudiation or countermand. The profit the seller would have made if the contract or the sale had been fully performed shall be considered in estimating such damages."

the market value of the goods retained is correct only in case the subject of the sale is specific goods of such a character that their rejection makes possible to the seller a second sale to a third person, one that he could not have made except for the rejection.'' (5 Corbin. Contracts (1964) § 1100. pp. 539, 541; see also 46 Am.Jur., Sales, § 631, p. 762, and 24 A.L.R.2d § 3, p. 1011, and cases cited and discussed therein.) Accordingly, in cases involving a sale to a buyer by an intermediate dealer whose relationship with a producer enables him to supply all obtainable customers, the buyer's breach does not make possible a new sale in which the profit lost by the breach would be replaced but, rather, results in an irreplaceable loss of profits because every new sale by such seller would bring in a new profit. (*Corbin, supra,* pp. 541-542.)

In *Patty* v. *Berryman,* 95 Cal.App.2d 159 [212 P.2d 937], the plaintiff entered into a contract with the defendant whereby the latter agreed to purchase from the plaintiff 22 prefabricated houses. At the time this contract was entered into the plaintiff did not own the subject houses; however, he had contracted with a third party to buy them. Before the time for delivery of the houses to the defendant, the latter repudiated the contract. Thereafter the plaintiff brought an action to recover the loss of anticipated profits which he suffered by reason of the defendant's breach of the contract. The trial court awarded the plaintiff damages based on this measure and the judgment was affirmed by this court on appeal. In concluding that the trial court had applied the proper measure of damages based upon section 3300, which provides that ''For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom,'' this court noted that section 1784, subdivision (3) ''has no application to a situation where the seller is a middleman and everyone knows his profit depends upon the difference in his purchase and selling price. Therefore, there are 'special circumstances' here present that make market value a false factor.'' (P. 171.)

The *Patty* case was relied upon in *Los Angeles Coin-O-Matic* to sustain a judgment awarding a middleman damages based upon his loss of anticipated profits. In that case the plaintiff, who was in the business of buying industrial laundry equipment from a manufacturer and reselling it to a customer for a

profit, contracted to sell certain equipment to the defendant. Upon the defendant's repudiation of the contract, which occurred before the plaintiff had actually purchased the equipment which it had agreed to sell to the defendant, the plaintiff brought an action to recover its anticipated profits from the defendant. The trial court, upon finding that the plaintiff acted as a middleman and dealer whose profit is made by buying equipment from a manufacturer and selling it to a user at a higher price, and that the plaintiff would have derived a profit of $3,719.93 from the resale of the subject equipment to the defendant, concluded that under section 1784, subdivision (4), the plaintiff was entitled to recover this amount of lost profits from the defendant. In affirming this judgment, the appellate court pointed out that the fact that the plaintiff was a middleman constituted a "special circumstance" making inapplicable the measure of damages provided for in section 1784, subdivision (3).

The case of *Rice* v. *Schmid,* 18 Cal.2d 382 [115 P.2d 498, 138 A.L.R. 589], which, upon superficial reading, appears to hold that section 1784, subdivision (3), contains the applicable measure of damages in the middleman situation, is, upon closer scrutiny, harmonious with the holdings in *Patty* and *Los Angeles Coin-O-Matic.* In *Rice* the plaintiff, a wholesale flour merchant, contracted to sell 6,000 barrels of flour to the defendant Schmid at a certain price. A portion of the flour had been delivered under the terms of the contract when Schmid sold his bakery to the remaining defendants who assumed the obligations of Schmid's contract with the plaintiff. Subsequently further deliveries of flour were made to the bakery. Thereafter the defendants refused to accept further deliveries and the plaintiff sued to recover damages. In awarding the plaintiff damages the trial court took into consideration the fact that the plaintiff, at the time of entering into the subject contract with Schmid, contracted with a flour manufacturer to purchase the particular brands of flour which were the subject of the plaintiff's contract with the defendants. Accordingly, the trial court awarded the plaintiff damages based upon the difference between the price at which the plaintiff had agreed to purchase the flour from the manufacturer and the price which the defendants had agreed to pay the plaintiff for the flour. In reversing the judgment, the Supreme Court held that the proper measure of damages to be applied in that case was the difference between the price which the plaintiff would have to pay for the flour on the open

market at the date of the defendants' breach and the price which the defendants had agreed to pay for the flour. In so holding, the court reasoned that, since the plaintiff's only obligation was to procure flour of specified brands, whether from the miller or the market, he was free to enter into a contract with a manufacturer to protect himself or to speculate upon a decline in the market before delivery would be required. Accordingly, said the court, ''Since he was free to wait and procure flour at the market price when ordered by the buyer, he is entitled to recover as damages the *profits* which he would have made in that event, the difference between the market price and the contract price.'' (Italics added; p. 388.)

Although the *Rice* case has been interpreted as applying section 1784, subdivision (3), as the applicable measure of damages in the situation where the buyer from a middleman breaches his contract to purchase goods from the latter (*Patty* v. *Berryman, supra,* p. 172; *Los Angeles Coin-O-Matic Laundries* v. *Harow, supra,* p. 333), we are satisfied that the holding in the *Rice* case is identical to that reached in the *Patty* and *Los Angeles Coin-O-Matic* cases.[9] It is apparent to us that the misinterpretation of the *Rice* case results from the use of the term ''market price.'' In *Rice* that term was used to refer to the price at which the middleman could *acquire* flour on the market and not in the sense of its currently understood meaning referring to the price at which the seller can *dispose* of the goods on the market after the breach. Accordingly, in *Rice* the plaintiff was allowed the loss of profits which he incurred as a result of the purchasers' breach, that profit being the difference between the cost of flour on the open market to the plaintiff and the price agreed to be paid by the purchasers.

In concluding from the foregoing that the proper measure of damages in the instant case was plaintiff's loss of profits, we note that while *Patty* and *Los Angeles Coin-O-Matic* are consistent to the extent that each allowed the middleman-seller to recover his anticipated loss of profits from the buyer, they are inconsistent to the extent that in the former such recovery was allowed under section 3300 whereas in the latter section

---

[9]The *Patty* and *Los Angeles Coin-O-Matic* cases distinguished *Rice* on the basis that the commodity in the latter case was a brand name flour and the contract there under consideration provided that the seller should procure the flour either from the miller or on the market. (*Patty* v. *Berryman, supra,* p. 172; *Los Angeles Coin-O-Matic Laundries* v. *Harow, supra,* pp. 333-334.)

1784, subdivision (4), was held to provide for the proper measure of damages. We are of the opinion that because section 1784, subdivision (4), by its plain language was not intended to apply to the instant situation, the measure of damages provided for in section 3300, applied in *Patty,* is the correct measure under which a middleman may recover his loss of profits.

Defendants argue, however, that the instant case is distinguishable from the *Patty* and *Los Angeles Coin-O-Matic* cases in that in contrast to the facts in those cases plaintiff in the instant case received the goods from the manufacturers and resold them after defendants' breach of the various contracts. This contention is not entirely accurate insofar as the items covered by the written contract and the oral contract for furniture are concerned, these being the two contracts upon which plaintiff is entitled to damages. As to these contracts the record discloses that, although these articles were delivered to plaintiff, as of the time of trial plaintiff had been able to resell only some of the subject items. In any event, even assuming that all of the goods involved in the subject contracts had been delivered to plaintiff and were ultimately resold by it, we are of the opinion that this fact does not alter the conclusion which we have reached above. Our conclusion in this regard is based upon the rationale which Corbin expresses in concluding that an award of damages based upon the difference between the contract price and the market price does not adequately compensate a middleman for a buyer's breach of a contract to purchase goods from him. As explained by Corbin, "the buyer's breach does not make possible a new sale in which the profit lost by the buyer's breach would be replaced. Every new sale by the seller would have brought in a new profit." (Corbin, *supra,* pp. 541-542.)

Finally, although we do not deem this factor to be controlling, we note that even in a situation where the middleman receives the goods and resells them after the original buyer's breach, section 1784, subdivision (3), would not be applicable if there were no available market for the goods in question. (*Patty* v. *Berryman, supra,* pp. 171-172; *Los Angeles Coin-O-Matic Laundries* v. *Harow, supra,* pp. 332-335.) ▮ In the instant case the trial court determined that the goods which defendants had agreed to purchase under the written contract and the oral contract for the furniture were custom-made and specially ordered for defendants and that there was no ready market for these goods. Since this finding is supported by the

evidence it cannot be disturbed on appeal and must be deemed conclusive on the issue of whether plaintiff had an available market for the goods which defendants refused to accept. Merely because plaintiff was able to resell some of the goods which it had ordered for defendants does not, as defendants argue, establish the availability of a market for the goods.

We therefore hold that the trial court erred in awarding plaintiff the sum of $692.25 for the loss of anticipated profits with respect to the oral contract for the sale of the laundry equipment, which was the subject of the third cause of action in action 326574.

The judgment is modified by deducting therefrom the sum of $692.25, and as thus modified is affirmed. Appellants shall recover one-fourth of their costs on appeal from respondent. Respondent shall bear its own costs on appeal.

Sullivan, P. J., and Sims, J., concurred.