[Civ. No. 12244. Third Dist. Sept. 22, 1970.]

DISTRIBU-DOR, INC., Plaintiff and Appellant, v.
GEORGE KARADANIS et al., Defendants and Respondents.

464

**Counsel**

Harry M. O'Laughlin for Plaintiff and Appellant.

Max H. Hoseit for Defendants and Respondents.

**Opinion**

**REGAN, J.**—In this action plaintiff sought damages for breach of contract. The trial was by the court, and judgment was entered for defendants. Plaintiff appeals.

Plaintiff, by its salesman Edward Blakemore, commenced negotiations with defendant Karadanis offering to supply certain mirrors and tub and shower enclosures for the Tahoe Inn under construction by defendant partners Karadanis, Maloff, and Hoseit, doing business as HKM Construction Company.

Blakemore's superior, Nelle, and Karadanis discussed the proposed figures at length; Nelle handed a price quotation paper to Karadanis, who took it, crossed out and replaced some figures, handed it back to Nelle. Karadanis then stated, "If you can live with this, we have an order." Nelle then signed the revised quotation list and handed it back to Karadanis for his signature. Karadanis then stated, "I'm not going to sign this, my word is my bond."

Blakemore made two later trips to the Tahoe Inn, at which time he measured for the wall mirrors. On both occasions he saw Karadanis. The mirrors were ordered on December 29, 1965. Blakemore visited the job in late January or early February, and at that time discovered there might be trouble with the order. Nelle, Blakemore and Maloff then held an unfruitful meeting, followed shortly by another meeting with Karadanis. At that time Karadanis announced that he had decided to do business with another firm.

Karadanis admitted that he had stated to Nelle, "My word is my bond," and that he had made the various changes on the quotation sheet and submitted it to Nelle. Karadanis described the meeting as one in which he merely took the proffered prices which he had changed for purposes of consideration, and stated his manner of operation as one in which he, "Just keep on holding the subcontractor—on the job, or letting several of the lowest bidders on the job, think they are going to get the job until the time actually comes to let the job go. And all during this period of time I'm trying to get a better price. Sometimes it's to my benefit, sometimes I lose a good contractor by doing it that way."

At the conclusion of the trial, the court stated:

"After looking at [the witnesses] and listening to [them] testify, I have come to the conclusion that the witnesses for the plaintiff were telling the truth, and that Mr. Karadanis was not telling the truth here this afternoon. I think there was a contract. But, I don't think that it's binding on the defendants because I don't think he signed it.

"And I think the evidence rule of the statute of frauds prevents recovery here. I don't think there is any question of what the testimony of the plaintiffs is the truth."

In its memorandum opinion, the court states, "In this action, assuming there was a contract between the parties, some of the provisions of which might be enforced under subdivision (3) (a) of section 2201 of the Commercial Code, nevertheless the plaintiff has failed to prove its damages.

*"For this reason,* it cannot recover. . . ." (Italics added.)

Finding No. 3, prepared by defendants, reads:

"[P]laintiffs submitted to defendants . . . a written offer to sell certain merchandise for a certain price. Finds that defendants did not accept said offer in writing, and no written contract was executed between plaintiff and defendants for the sale of building materials consisting of shower enclosures and plate glass mirrors."

Plaintiff then submitted to the court proposed findings, one of which reads as follows:

"[P]laintiff submitted to defendants . . . a written offer to sell certain merchandise for a certain price. Finds that defendants accepted said offer and that the contract was enforceable under the provisions of Subdivision (3) (a) of Section 2201 of the Commercial Code."

 Defendants conclude from the above events that the court determined the issue of a contract adversely to plaintiff, i.e., "the court found . . . there was no contract between the parties." However, it is apparent that the court did not so find. The trial court concluded only that there was no *written* contract between the parties, and specifically omitted any finding to the effect that there was no oral express contract between the parties.

Code of Civil Procedure section 634 provides: "When written findings and conclusions are required, and the court has not made findings as to all facts necessary to support the judgment or a finding on a material issue of fact is ambiguous or conflicting, and the record shows that such omission, ambiguity or conflict was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663, it shall not be inferred on appeal or upon a motion under Section 657 or 663 that the trial court found in favor of a prevailing party as to such facts or on such issue."

The trial court was served with plaintiff's proposed findings of fact several days after receipt of defendants'; and five days thereafter judgment was entered. There was a definite ambiguity in the proposed findings of fact submitted by the defendant *in that only the existence of a written contract was refuted.* However, evidence was offered, and the trial briefs argued, the existence of an express oral contract within the estoppel exception of the statute of frauds.[1] Therefore, this court cannot now determine that the trial court found in favor of defendants on this issue. (*Anderson* v. *Southern Pac. Co.* (1968) 264 Cal.App.2d 230, 234-235 [70 Cal.Rptr. 389]; see also *Kerr Land & Timber Co.* v. *Emmerson* (1969) 268 Cal.App.2d 628, 635 [74 Cal.Rptr. 307].)

---

[1]Defendants contend on appeal that estoppel was not pled, and, therefore, plaintiff cannot now recover on anything other than the express contract set forth in their complaint. However, evidence was received, both parties argued, and the court obviously considered the applicability of the Commercial Code section codifying the statute of frauds. Defendants were not surprised or prejudiced in any way. "Its come-lately-lament cannot now be made." (*Zander* v. *Texaco, Inc.* (1968) 259 Cal.App.2d 793, 802 [66 Cal.Rptr. 561]. See also *Sloan* v. *Hiatt* (1966) 245 Cal.App.2d 926, 936 [54 Cal.Rptr. 351].)

Secondly, the appellate court may consider the opinion of the trial court for the purpose of discovering the process by which the trial court arrived at its conclusion and as an aid in interpreting the findings. (*Wechsler* v. *Capitol Trailer Sales* (1963) 220 Cal.App.2d 252, 262 [33 Cal.Rptr. 680]; *Arvin-Kern Co.* v. *B. J. Service, Inc.* (1960) 178 Cal. App.2d 783, 793 [3 Cal.Rptr. 238].) Although this opinion cannot be used to impeach the findings, it can be used to explain them. (*McBain* v. *Santa Clara Sav. & Loan Assn.* (1966) 241 Cal.App.2d 829, 840 [51 Cal.Rptr. 78].) The findings of the trial court can be explained consistently with the judgment by construing them as proscribing the existence of a *written* contract, but permitting an *oral* one.

Commercial Code section 2201 requires a written contract for sale of goods in an amount over $500 *unless* the goods are to be specially manufactured for the buyer; are not suitable for resale in the ordinary course of the seller's business; and the seller has already started the manufacture or has attempted to procure the goods. Nelle testified that the mirrors he ordered for the Tahoe Inn job were of an unusual size and were not readily resaleable; that many of them had to be recut and edged at great expense and loss; and that Distribu-Dor's inventory in the shower and tub enclosures had been distorted beyond normal requirements.

The court could properly find the mirrors fit within subdivision (3)(a), section 2201 of the Commercial Code. Since the tub and shower enclosures, although normally saleable in the plaintiff's course of business, were included in the same contract sought to be enforced, the portion of the contract also falls without the statute of frauds. (See *Sloan* v. *Hiatt* (1966) 245 Cal.App.2d 926, 933 [54 Cal.Rptr. 351].) The subdivision reads as follows:

"(3) A contract which does not satisfy the requirements of subdivision (1) but which is valid in other respects is enforceable

"(a) If the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received *and under circumstances which reasonably indicate that the goods are for the buyer,* has made either a substantial beginning of their manufacture or commitments for their procurement . . . ." (Italics added.)

The language of the subdivision clearly shows that such behavior on the part of the seller is considered to be evidence of a bona fide business transaction. Therefore, there is no justification in holding one portion of the contract enforceable and one not.

Commercial Code section 2201, subdivision (3)(a), is clearly a codification of one aspect of the general rule which does not permit a party to plead the bar of the statute of frauds if he represents to another that he intends to enter an oral contract, and the other person changes his position in reliance. (Comment, Cal. Com. Code, § 2201; 1 Witkin, Summary of Cal. Law (7th ed. 1960) Contracts, § 111, p. 119; see also *Irving Tier Co.* v. *Griffin* (1966) 244 Cal.App.2d 852, 866 [53 Cal.Rptr. 469]; 53 Cal.L.Rev. 590; earlier California decisions required that the representation be made as to compliance with the statute itself; see, for example, *Vierra* v. *Pereira* (1939) 12 Cal.2d 629 [86 P.2d 816].)[2]

Strict adherence to the statute of frauds has been abandoned in favor of certain limited exceptions to promote equity and fair dealing between parties. Plaintiff had a valid contract for sale of the mirrors.

■ California Commercial Code section 2703 provides in pertinent part as follows: "Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract . . . then also with respect to the whole undelivered balance, the aggrieved seller may

". . . . . . . . . . . . . . . . . . . . . . . . .

"(e) Recover damages for nonacceptance . . . or in a proper case the price . . . ."

Commercial Code section 2708 provides as follows: "(1) Subject to subdivision (2) and to the provisions of this division with respect to proof of market price (Section 2723), the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this division (Section 2710), but less expenses saved in consequence of the buyer's breach.

"(2) If the measure of damages provided in subdivision (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this division (Section 2710), due allowance for costs reasonably incurred and due credit for payments or proceeds or resale."

The trial court at no time indicated which of these measures of seller's

---

[2]Note that even this stringent requirement is met here in that Karadanis represented that his signature was not necessary.

damages it considered in the instant case. The legislative history of section 2708 indicates that it is similar to former Civil Code section 1784, subdivision (3). Among the cases construing this section, *Los Angeles Coin-O-Matic Laundries* v. *Harow* (1961) 195 Cal.App.2d 324, 332-333 [15 Cal.Rptr. 693], the court described a "middleman" to be a "special circumstance" under which the measure of damages as the difference between the market price and contract price is not a true representation of the seller's damages. No argument can be made herein that Distribu-Dor is not a middleman, i.e., one who buys at one price from a manufacturer for resale at a higher price. (*Id.* at p. 335.)

The court in *Irving Tier Co.* v. *Griffin, supra,* 244 Cal.App.2d at pp. 867-868, emphasized "that an award of damages based upon the difference between the contract price and the market price does not adequately compensate a middleman upon his buyer's repudiation of an agreement to purchase goods from him, but that the proper measure of damages in such a case is the dealer's anticipated profit. The rationale supportive of this principle is that 'The rule that the seller's damages are measured by the contract price minus the market value of the goods retained is correct only in case the subject of the sale is specific goods of such a character that their rejection makes possible to the seller a second sale to a third person, one that he could not have made except for the rejection.' [Citations.] Accordingly, in cases involving a sale to a buyer by an intermediate dealer whose relationship with a producer enables him to supply all obtainable customers, the buyer's breach does not make possible a new sale in which the profit lost by the breach would be replaced but, rather, results in an irreplaceable loss of profits because every new sale by such seller would bring in a new profit."

Plaintiff in this case was acting as a middleman. Therefore, the measure of damages described in Commercial Code section 2708, subdivision (2), must be applied; that section provides as the measure of damages the profit which would be earned, including reasonable overhead.

■ "Uncertainty as to the fact of damage, that is, as to the nature, existence or cause of the damage, is fatal. But the same certainty as to the *amount* of the damage is not required. ■ An innocent party damaged by the acts of a contract violator will not be denied recovery simply because precise proof of the amount of damage is not available. The law only requires that some reasonable basis of computation be used, and will allow damages so computed even if the result reached is only an approximation. . . . ' "The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created. . . ." ' " (Italics added; *Allen* v. *Gard-*

*ner* (1954) 126 Cal.App.2d 335, 340 [272 P.2d 99]; *Nelson* v. *Reisner* (1958) 51 Cal.2d 161, 171 [331 P.2d 17].)

█ We have determined that an express contract existed for sale of the mirrors, recovery for the breach of which, under Commercial Code section 2201, subdivision (3)(a), is not barred by the statute of frauds. █ Plaintiff offered extensive evidence on the loss of investment; cutting costs to recut and re-edge the mirrors; loss of profit on the entire job (estimated at 10 percent); loss of overhead on the job (estimated at 12 percent). These figures, considerably expanded in the record, provide adequate evidence on which the court could determine the loss of plaintiff's profit and overhead.

We conclude, therefore, that the court erred both as to the measure of damages to be applied, and in failing to acknowledge the uncontroverted showing of damage sufficient as a matter of law to support an award therefor. Accordingly, the judgment appealed from is reversed, and the matter remanded for further proceedings consistent with this opinion.

Friedman, Acting P. J., and Janes, J., concurred.