[Civ. No. 317.   Fifth Dist.   Aug. 11, 1964.]

GREGORY MOSEKIAN, Plaintiff and Respondent, v. DAVIS CANNING COMPANY et al., Defendants and Appellants.

C. Ray Robinson, John E. Whiting, Mary C. Fisher and Joel West for Defendants and Appellants.

Ara Ohanesian for Plaintiff and Respondent.

STONE, J.—Defendant Davis Canning Company and its fruit buyer, defendant Adams, appeal from a judgment for damages resulting from a breach of an oral contract for the sale of plaintiff's peach crop. Defendants contend that Civil Code section 1724, subdivision (1), requiring a sale of goods for a consideration valued in excess of $500 to be in writing, bars plaintiff's recovery, and that defendants are not estopped from asserting this statute. The trial court found against defendants on both issues. Defendant Adams appeals from the judgment against him on the additional ground that he was acting as the agent of Davis Canning Company.

Summarizing the facts most favorably to the prevailing plaintiff, as we must (*Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557]), the following sequence of events gave rise to this case: Defendant Adams called at plaintiff's farm, identified himself as a buyer for defendant Davis Canning Company, and offered to buy plaintiff's peach crop. Plaintiff asked the price per ton, and Adams replied that since the

price had not been set, the purchase would be on an "open contract." In the canning peach industry the cannery association sets a price each year when crop and market conditions are ascertained. Customarily canners contract to buy crops before maturity, agreeing to pay whatever price per ton the association thereafter sets; hence the term "open contract."

Plaintiff testified that Adams bought his crop "roadside" on such an open contract, and when he asked for confirmation Adams said he would bring a written contract for signature when the price was set. This Adams did not do. The peaches ripened, and plaintiff went looking for Adams. When he found him, at a neighbor's farm, he asked for picking boxes to "roadside" his fruit, which was dropping. Adams said he hadn't started taking fruit but that he would commence in a couple of days, at which time he would see plaintiff. Adams did not return, so again plaintiff went looking for him and when he found him advised that the fruit was ripening rapidly and falling on the ground. Adams replied, "Sell it to somebody else." Plaintiff, unable to dispose of his fruit at a cannery, sold it to a "dry yard." The trial court awarded plaintiff, as damages, the difference between the canning peach price and the dry yard price.

█ Defendants argue strenuously that conflicts between plaintiff's deposition and his testimony given in court cast grave doubts upon his version of the conversation with Adams. Since the court's finding that there was an oral contract, rests largely upon plaintiff's courtroom version of the conversations, defendants argue that the evidence is not substantial. Nevertheless, it was for the trial court to resolve discrepancies within plaintiff's testimony, as well as the conflict between the testimony of Adams and that of plaintiff. The court accepted the testimony plaintiff gave at the trial, and it is not our prerogative to set aside this resolution of conflicting evidence. (*Bruce* v. *Ullery*, 58 Cal.2d 702, 711 [25 Cal.Rptr. 841, 375 P.2d 833]; *People* v. *Finley*, 219 Cal.App.2d 330, 338 [33 Cal.Rptr. 31].)

We proceed to defendants' contention that the oral contract for the sale of a growing crop of peaches for a consideration in excess of $500 is within the purview of Civil Code section 1724, subdivision (1), which requires that: "A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by

action unless the buyer shall accept part of the goods or choses in action so contracted to be sold, or sold and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.'' (See also Civ. Code, § 1624a.)

First, we note that when sold separately a crop of fruit growing upon trees is not considered to be a part of the real property insofar as pertains to Civil Code section 1624, subdivision 4, which requires the sale of an interest in real property to be in writing. This rule of law was established in a number of very early cases which are cited by plaintiff, and it was reaffirmed by the case principally relied upon by plaintiff, *Vulicevich* v. *Skinner*, 77 Cal. 239, 240 [19 P. 424], often referred to as the landmark case on the question. The court in *Vulicevich* said: '' 'Contracts for the sale of growing periodical crops—*fructus industriales*—are not within the statute of frauds, and therefore need not be made in writing. . . .' '' This indiscriminate use of the term ''statute of frauds'' without reference to the particular statute or code section that the court was construing, apparently has given rise to uncertainty as to whether a contract for the sale of growing crops is within the provisions of Civil Code section 1724, subdivision (1), quoted above. Annotated codes appear to regard the language of Vulicevich as placing a contract for the sale of growing crops outside the purview of section 1724, subdivision (1), the so-called ''sales act,'' and its counterpart, Civil Code section 1624a.

In our view such a broad interpretation of *Vulicevich* is not warranted because an analysis of the opinion reveals, first, that the requirements of Civil Code sections 1624a and 1724, subdivision (1), were complied with in that the buyer paid the seller $600 on account of the oral agreement to purchase the crop. Second, the court predicated its holding that the ''statute of frauds'' is not applicable to a contract for the sale of a growing crop, upon the cases of *Marshall* v. *Ferguson,* 23 Cal. 65, and *Davis* v. *McFarlane,* 37 Cal. 634 [99 Am. Dec. 340], both of which were decided prior to the enactment of the Sales Act of 1874. Thus the sale of a growing crop in relation to a sale of goods was not an issue in either cited case. Third, the question presented in *Vulicevich* was whether growing crops are part of the realty upon which they

are produced, not whether they are goods as that term is used in Civil Code sections 1624a and 1724, subdivision (1).

The sole statute of frauds question in *Vulicevich,* as defined by the opinion, is: "He makes the point that the crop of fruit growing upon the trees and vines *was real property,* and that the alleged contract of sale was void under the *statute of frauds,* as not being in writing, and that the court wrongfully charged the jury upon the matter." (P. 240.) (Italics added.)

The court answered the question it had thus posed, as follows: "We cannot concur with this view. 'Contracts for the sale of growing periodical crops—*fructus industriales*—are not within the *statute of frauds,* and therefore need not be made in writing. After some vacillation, this has become the settled doctrine.' (*Marshall* v. *Ferguson,* 23 Cal. 65; *Davis* v. *McFarlane,* 37 Cal. [634] 636 [99 Am. Dec. 340].)" (Italics added.)

The answer, standing alone, does not constitute the legal concept that emerges from *Vulicevich,* and quotation of the answer out of context, that is, without regard for the language of the opinion which precedes and delimits the answer, imputes to the case a broader scope than is justified. We conclude that in *Vulicevich* the court did not purport to pass upon the question whether a contract for the sale of a growing crop is within the purview of the Sales Act provisions of the various statutes falling within the broad language, "statute of frauds." It would be at least anomalous if *Vulicevich,* which determined that growing crops sold by contract are goods, *fructus industriales,* should be cited also as authority for the proposition that growing crops are not goods within the purview of Civil Code sections 1624a and 1724, subdivision (1).

Furthermore, we deem controlling the language used in Civil Code section 1796, subdivision (1), defining the term "goods" as applied to a sale of growing crops agreed to be severed before sale or under the contract of sale. Under the heading "Definitions" it is provided, in pertinent part: " 'Goods' include all chattels personal other than things in action and money. The term includes emblements, industrial growing crops, and things attached to or forming part of the land which are agreed to be severed before sale or under the contract of sale." (See also Civ. Code, § 660.)

■ The foregoing definition is clear, and in the absence of any Supreme Court decision specifically forbidding its

construction as an adjunct to Civil Code section 1724, sub-division (1), we hold that Civil Code section 1796, subdivision (1), is not abrogated by the broad language of *Vulicevich* taken out of context. Therefore, the trial court erred in finding that Civil Code sections 1724, subdivision (1), and 1624a are not applicable to the oral contract in this case.

A reversal does not follow, even though the provisions of Civil Code section 1724, subdivision (1), are applicable, since the trial court found defendants were estopped to invoke the statute. The doctrine of estoppel as applied to the statute of frauds is delineated in *Monarco* v. *Lo Greco,* 35 Cal.2d 621 [220 P.2d 737]. At pages 625-626 Mr. Justice Traynor thus summarized circumstances under which the doctrine may be invoked: "It is contended, however, that an estoppel to plead the statute of frauds can only arise when there have been representations with respect to the requirements of the statute indicating that a writing is not necessary or will be executed or that the statute will not be relied upon as a defense. . . . however, where either an unconscionable injury or unjust enrichment would result from refusal to enforce the contract, the doctrine of estoppel has been applied whether or not plaintiff relied upon representations going to the requirements of the statute itself. . . . In reality it is not the representation that the contract will be put in writing or that the statute will not be invoked, but the promise that the contract will be performed that a party relies upon when he changes his position because of it."

█ Defendants argue that the evidence upon which the court based the finding of estoppel falls short of even the broad language of *Monarco.* The answer lies in whether there is acceptance of plaintiff's testimony which, standing alone, if believed, sufficiently supports the finding. The trial judge observed this 80-year-old man who is hard of hearing, and to the trial judge belonged the prerogative of believing or disbelieving his testimony, as well as all other evidence. The record reflects testimony of the plaintiff which supports the trial court's finding: "That the Plaintiff did in fact reason-ably rely upon the agreements and representations of the Defendants described in Paragraphs (5) and (6) and was induced thereby to sell his growing crop of peaches to the Defendant DAVIS CANNING COMPANY, in June, 1960, and to hold said crop for the use and benefit of the Defendant Cannery and seek no other buyers therefor until after De-fendants' repudiated their contract of purchase about July 24, 1960, and by which date a portion of the crop had fallen

due to overripening and a substantial part of the Plaintiff's peaches had become too ripe for sale to fresh fruit packers, . . .''

Plaintiff's change of position brings the case within the rationale of the *Monarco* case.

■ Well taken is defendants' third point on appeal, that the judgment against defendant Adams, the agent, is in error. Plaintiff argues that it was the burden of defendants to require him to elect between the agent and the principal, and that absent a demand both are liable. However, the cases cited by plaintiff on this question all concern an undisclosed agency. Here, at the outset, Adams was disclosed to be the agent of Davis Canning Company; plaintiff was never in doubt as to the identity of principal and agent. The judgment against Adams, personally, cannot stand. (See *Hayman* v. *Shoemake*, 203 Cal.App.2d 140, 159 [21 Cal.Rptr. 519], and cases cited therein.)

The judgment against Davis Canning Company is affirmed; the judgment against Alvin B. Adams is reversed.

Conley, P. J., concurred.