DEL HAYES & SONS, INC. v. BRUCE MITCHELL
AND ANOTHER.

230 N. W. 2d 588.

May 30, 1975—No. 45016.

*Walsh & Nelson* and *Jerold O. Nelson,* for appellants.
*Smith & Pringle* and *Gary L. Pringle,* for respondent.

Heard before Otis, Kelly, and Chanak, JJ., and considered and decided by the court en banc.

NICHOLAS S. CHANAK, JUSTICE.*

Appeal by defendants from summary judgment of the District Court, Sherburne County, in favor of plaintiff for goods sold and delivered and denying recovery on the counterclaim. We affirm.

On November 24, 1972, the parties entered into an oral agreement whereby plaintiff contracted to sell, and defendants agreed to purchase for future delivery, certain soybeans for a price of $3.50 per bushel. Approximately 4,020 bushels were delivered to defendant on May 16 and 17, 1973. The market value of the beans had increased to $8 or $9 per bushel at time of delivery, and after delivery continued to rise, reaching $10 per bushel.

The parties' disagreement as to the quantity of beans, the sub-

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

ject of the oral contract, culminated in this action. Plaintiff claimed that the contract was for 4,000 bushels of beans, and defendants insisted that plaintiff promised to sell a "bin of beans." Under defendants' view, plaintiff had failed to deliver approximately 1,000 to 1,500 bushels of the total beans contracted for and remaining in plaintiff's bin. At no stage of the negotiations or agreement was any writing in any form, relating to the agreement, executed by either of the parties.

Plaintiff was never paid for the beans delivered. As a consequence, plaintiff sought recovery of the agreed price for the number of bushels actually delivered (which the parties later stipulated was $13,151.73), and defendants counterclaimed for damages resulting from plaintiff's failure to deliver the beans remaining in plaintiff's bin after delivery of 4,020 bushels.

At the pretrial conference on December 27, 1973, the trial court raised the issue of the statute of frauds, Minn. St. 336.2— 201, which provides that an agreement for the sale of goods of a value of more than $500, to be enforceable, must be in writing, and so noted in its pretrial order of January 2, 1974, but without a final determination.

At the conference in chambers between court and counsel, preliminary to the selection of a jury, on the day set for trial, January 22, 1974, plaintiff moved to amend its reply to defendants' counterclaim by raising the affirmative defense of the statute of frauds. At the same time, defendants moved to amend their counterclaim to plead affirmatively estoppel. Both motions were granted.

After the court indicated at the latter conference that the defendants could not prove their alleged counterclaim, defendants were then permitted to make an offer of proof as to (1) facts relied upon to prove defendants' version of the verbal agreement and (2) conduct or representations of plaintiff which would constitute an estoppel. The court then determined that defendants' counterclaim was within the statute of frauds and that the conduct and representations of the plaintiff, even if true, did not constitute an estoppel. Rejected also was defendants' conten-

tion that a jury issue arose as to whether a "bin of beans" was a commercial unit. Defendants had argued that acceptance of part was acceptance of the entire unit within the meaning of Minn. St. 336.2—606(2), so as to take the oral agreement out of the statute of frauds under § 336.2—201(3)(c).

Having further advised counsel that under Minn. St. 336.2—201(3)(c) the payment for the 4,020 bushels was enforceable because it was in "respect to goods * * * which have been received and accepted" and therefore not within the statute of frauds, the trial court ordered judgment, which is the subject of this appeal.[1]

Defendants' appeal raises the following issues: (1) Whether the trial court exceeded its authority in granting what was in effect a summary judgment on its own motion on the basis of the information disclosed by the interrogatories, depositions, files, pleadings, pretrial conference, and offer of proof preliminary to trial. (2) Did the question of whether plaintiff was estopped to raise the statute of frauds constitute a genuine issue of material fact? (3) Did the question of whether a "bin of beans" is a commercial unit within the meaning of the Uniform Commercial Code (hereafter UCC) constitute a genuine issue of material fact? (4) Did the trial court err in entering judgment against Bruce Mitchell individually?

### Summary Judgment Sua Sponte

Defendants contend that the trial court exceeded its authority because it granted a summary judgment on its own motion on the day of trial without notice to the parties. In support of that contention, defendants rely on McAllister v. Independent School Dist. No. 306, 276 Minn. 549, 149 N. W. 2d 81 (1967).

We did hold in McAllister, as defendants contend, that under Rule 56.03, Rules of Civil Procedure,[2] the stated time of 10 days'

---

[1] Prior thereto, the parties stipulated that the amount of plaintiff's claim was $13,151.73.

[2] Rule 56.03, Rules of Civil Procedure, provides in part: "The motion shall be served at least 10 days before the time fixed for the hearing.

formal notice is mandatory, absent a clear waiver by the adversary. The aggrieved party there vigorously opposed the motion for summary judgment by defendants on two grounds: (1) Notice was 5 days short, and (2) plaintiffs had other evidence to submit.

The circumstances which are presented here distinguish McAllister v. Independent School Dist. No. 306, *supra*. Significant are the following facts: (1) The pretrial conference was held on December 27, 1973, at which time the trial court raised the issue of the statute of frauds relative to defendants' counterclaim and incorporated the issue in its pretrial order of January 2, 1974, in effect affording written notice of the issue to both parties; (2) by the same order, trial by jury was set for January 22, 1974, in effect affording defendants a 20-day opportunity to prepare to meet the issue raised; (3) on the day set for trial, at a conference in chambers between court and counsel preliminary to selection of a jury, the court reviewed its pretrial order, reiterated its opinion that the defendants could not pursue their counterclaim because of the statute of frauds, secured agreement of counsel as to the amount of plaintiff's claim, and then afforded defendants an opportunity to make their offer of proof; (4) defendants availed themselves of that opportunity by attempting to show genuine fact issues as to the provisions of the oral agreement and facts relating to estoppel and were fully heard as to all the questions involved; (5) the trial judge thereupon ruled that the statute of frauds precluded defendants' counterclaim and denied estoppel; (6) at the time defendants voiced no objection on the record to the procedure employed by the court; and (7) no prejudice was shown by defendants by rea-

---

The adverse party prior to the day of hearing may serve opposing affidavits. Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law."

son of the absence of a formal motion.

Neither the summary judgment rule nor any other procedural rule gives the trial court express authority to enter a summary judgment on its own motion. The authority is derived from the inherent power of the trial court to dispose summarily of litigation when there remains no genuine issue as to any material fact and judgment must be ordered for one of the parties as a matter of law. The same conditions must exist as would justify a summary judgment on motion of a party. Green v. Kaesler-Allen Lumber Co. 197 Kan. 788, 420 P. 2d 1019; Sheild v. Welch, 4 N. J. 563, 73 A. 2d 536; Roberts v. Braynon, 90 So. 2d 623 (Fla. 1956); Buffington v. Continental Cas. Co. 69 N. M. 365, 367 P. 2d 539 (1961). See, also, Rule 16(6), Rules of Civil Procedure. Concededly, there were genuine fact issues involved in the instant case. But as their resolution would in no way affect the application of the rules of law which we adopt herein, the trial court properly denied defendants a jury trial on those issues.

In Niazi v. St. Paul Mercury Ins. Co. 265 Minn. 222, 121 N. W. 2d 349 (1963), we considered facts analogous to those in this case. There, plaintiffs had brought an action under the medical pay and uninsured motorist provisions of an automobile insurance policy. The policy provisions required that such disputes be arbitrated in accordance with the rules of the American Arbitration Association. At the pretrial conference, the trial court, either on its own motion or upon oral motion of the attorney for the insurer, ordered the proceedings stayed until plaintiffs submitted the dispute to arbitration pursuant to the policy. No formal application for stay and order for arbitration had been made by defense counsel. Plaintiffs sought a writ of mandamus from this court alleging that the trial court had in effect granted a summary judgment on its own motion in a manner not in compliance with the rules.

In denying the application for the writ, we reasoned as follows:

"* * * [T]he trial judge does have power under Rule 56.04

to grant summary judgment with respect to all or some of the issues raised by the pleadings. [Citations omitted.]

" 'Unless the objecting party can show prejudice arising from the lack of notice * * *, exercising [summary judgment] power at pre-trial is sound. Seldom should lack of notice prejudice a party, as each party should be fully prepared on the facts applicable to the case in order to participate in the pre-trial. To compel a 10 day delay solely to comply with the notice requirements of Rule 56.03 would seem ill-advised.' [Citations omitted.]" 265 Minn. 227, 121 N. W. 2d 353.

We hold that under the circumstances of this case the trial court properly exercised its power in granting summary judgment sua sponte.

### Estoppel

Defendants' offer of proof was that after the oral agreement of November 24, 1972, was negotiated and relying on plaintiff's promise to sell defendants all of the beans in its bin, defendants entered into a contract with Bunge Corporation on the same day to resell 4,000 bushels of the beans to Bunge. The resale to Bunge was at a slightly higher price and was limited to 4,000 bushels because, defendants claim, neither plaintiff nor defendants knew exactly how many bushels there were in plaintiff's bin. Defendants claim that the general understanding was that the bin was about half full and that the full bin would hold approximately 12,000 bushels.

Later that week, defendants claim, plaintiff assured defendants that there were from 5,000 to 5,500 bushels in the bin, and acting in reliance thereon and upon later commitments from several other farmers, defendants on December 6, 1972, again resold another lot of 4,000 bushels to Bunge for June delivery. Of that total 4,000-bushel lot, defendants relied upon the additional 1,000 bushels from plaintiff. Defendants' reliance upon plaintiff's promise was such that the former made no additional hedges against the two future deliveries. Defendants argue that

in order to fulfill their two contracts with Bunge, it became necessary for them to deliver 1,000 bushels of expensive beans rather than plaintiff's less costly beans and thus defendants incurred a loss. Based upon this offer of proof, defendants contend that a fact issue of estoppel was for the jury.

The offer of proof on that issue was clearly one creating a fact issue. However, the court's denial of estoppel would constitute reversible error only if the doctrine of estoppel is available to defendants under the statute of frauds in the UCC. The trial court held that no estoppel would follow even if defendants established the facts that they offered to prove.

The statute of frauds provided by the UCC with respect to contracts for the sale of goods in excess of $500 [3] does not expressly state that estoppel will take a contract out of the statute of frauds. Nevertheless, the general savings clause of the UCC provides that the principles of estoppel, as well as other common-law principles, will continue to apply unless expressly displaced by provisions of the UCC. [4]

In arguing that plaintiff should be estopped from asserting the statute of frauds, defendants fail to draw a distinction between equitable estoppel, also referred to as estoppel in pais, and promissory estoppel, also referred to as quasi contract. Language used by the trial court at the time he considered defendants' offer of proof would seem to indicate that equitable estoppel was

[3] Minn. St. 336.2—201(1) provides in relevant part: "(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker."

[4] Minn. St. 336.1—103 provides: "Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, *estoppel*, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." (Italics supplied.)

the basis for his holding that the offer of proof did not make out the elements of an estoppel.[5] On appeal, however, defendants have urged us, without specifying either promissory or equitable estoppel, to apply the reasoning of certain promissory estoppel cases cited by them. Thus, it is necessary for us to consider the applicability of each of the types of estoppel to the facts of this case.

We note that defendants' offer of proof tended to show the elements of promissory—although perhaps not intended—rather than equitable estoppel. The doctrine of promissory estoppel is wholly inapplicable here for the simple reason that an actual contract existed.

Promissory estoppel is the name applied to a contract implied in law where no contract exists in fact.[6] The effect of promissory estoppel is to imply a contract from a unilateral or otherwise unenforceable promise coupled by detrimental reliance on the part of the promisee.[7]

The Restatement rule is that promissory estoppel will defeat the statute of frauds only when the promise relied upon is a promise to reduce the contract to writing.[8] Many of the courts which have considered the problem have either expressly adopted

---

[5] The trial court stated: "[A]nd with respect to estoppel, I do not think this is a proper case for estoppel. Stretch it how you will, I can't bring in the elements of fraud, and estoppel is always predicated upon some ramification of fraud. I don't believe we have it here."

[6] Its elements are set forth in Restatement, Contracts, § 90, as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

[7] In Constructors Supply v. Bostrom Sheet Metal Works, 291 Minn. 113, 116, 190 N. W. 2d 71, 74 (1971), we quoted Restatement, Contracts, § 90, to establish the elements of promissory estoppel and characterized the doctrine as "a species of or substitute for consideration" or a "reliance doctrine."

[8] Restatement, Contracts, § 178, comment f.

the Restatement rule or have simply rejected the view that promissory estoppel can remove an oral contract from the statute of frauds.[9] The jurisdictions which adopt this restrictive view do so because a promissory estoppel exception would likely render the statute of frauds nugatory.[10] There is always some degree of reliance on an oral contract. Some jurisdictions adopt the slightly less restrictive view advocated by Williston and permit promissory estoppel where the detrimental reliance is of such a character and magnitude that refusal to enforce the contract would permit one party to perpetrate a fraud.[11] A mere refusal to perform an oral agreement, unaccompanied by unconscionable conduct, however, is not such a fraud as will justify disregarding the statute. 3 Williston, Contracts (3 ed.) § 533A.

We have given careful consideration to the various views of the application of promissory estoppel to cases involving oral contracts and hold that, under the facts of this particular case,

---

[9] See, e. g., Alaska Airlines v. Stephenson, 217 F. 2d 295 (9 Cir. 1954) (adopts Restatement); Cox v. Cox, 292 Ala. 289, 289 So. 2d 609 (1974) (denies estoppel); Sinclair v. Sullivan Chevrolet Co. 45 Ill. App. 2d 10, 195 N. E. 2d 250 (1964) (denies estoppel); Polka v. May, 383 Pa. 80, 118 A. 2d 154 (1955) (denies estoppel); cf. Fairway Machine Sales Co. v. Continental Motors Corp. 40 Mich. App. 270, 198 N. W. 2d 757 (1972).

[10] See, e. g., Ozier v. Haines, 411 Ill. 160, 103 N. E. 2d 485 (1952); Tiffany, Inc. v. W.M.K. Transit Mix, Inc. 16 Ariz. App. 415, 493 P. 2d 1220 (1972).

[11] "The fraud most commonly treated as taking an agreement out of the Statute of Frauds is that which consists in setting up the Statute against its enforcement after the other party has been induced to make expenditures or a change of situation * * *, so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscionable injury and loss." 3 Williston, Contracts (3 ed.) § 533A, p. 798.

See, e. g., Gem Corrugated Box Corp. v. National Kraft Container Corp. 427 F. 2d 499 (2 Cir. 1970); Oxley v. Ralston Purina Co. 349 F. 2d 328 (6 Cir. 1965); Irving Tier Co. v. Griffin, 244 Cal. App. 2d 852, 53 Cal. Rptr. 469 (1966); Mosekian v. Davis Canning Co. 229 Cal. App. 2d 118, 40 Cal. Rptr. 157 (1964).

promissory estoppel was not available to defendants so as to take the instant oral contract out of the statute of frauds set forth in the UCC, Minn. St. 336.2—201(1).[12]

We next turn to the question of whether the trial court was correct in holding that equitable estoppel did not take the contract out of the statute of frauds. Equitable estoppel is a type of equitable doctrine applicable not only to the statute of frauds but also to any of a number of different claims and defenses. Elements of an equitable estoppel are set forth in 3 Pomeroy, Equity Jurisprudence (5 ed.), § 805, as follows:

"* * * 1. There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, *and at the time when it was acted upon by him.* 4. The conduct must be done with the intention, or at least with the *expectation*, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. There are several familiar species in which it is simply *impossible* to ascribe any *intention* or even *expectation* to the party estopped that his conduct will be acted upon by the one who afterwards claims the benefit of the

---

[12] Albachten v. Bradley, 212 Minn. 359, 3 N. W. 2d 783 (1942), relied on by defendants, does not compel a contrary result. In that case, defendant by making false promises intentionally induced plaintiff to let the statute of limitations run. Despite a statute which provided that a writing was necessary to make a novation or a continuing contract that would extend the statute of limitations, we held that defendant was estopped from raising the statute of limitations, reasoning that he should not profit from his obvious deceit. The case is obviously distinguishable on its facts and is of only limited assistance here.

estoppel. 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it."

From Pomeroy's recitation of the elements, we recognize that equitable estoppel is akin to fraud. It does require a representation or concealment of material facts. We have previously held that the latter requirement is an indispensible element of equitable estoppel. In Bremer v. Commissioner of Taxation, 246 Minn. 446, 454, 75 N. W. 2d 470, 475 (1956), we said:

"* * * It is fundamental that estoppel is based upon a representation of fact and cannot exist as to an expression of opinion as distinguished from a representation of fact."

We agree with the trial court that defendants' offer of proof contained no showing or representation or concealment of material facts. Thus, Roberts v. Friedell, 218 Minn. 88, 15 N. W. 2d 496 (1944), cited by defendants, is of no assistance despite the fact that we there held that equitable estoppel would take an oral contract out of the statute of frauds. That case, unlike the case at bar, involved concealment of material facts. Thus, we hold that the doctrine of equitable estoppel was not proved by defendants so as to take the oral contract out of the UCC statute of frauds, Minn. St. 336.2—201(1).

### Commercial Unit

Defendants maintain that the trial court erred in not permitting the question of whether a "bin of beans" is a commercial unit to go to the jury. At the conference preliminary to trial, defendants offered to prove that within the relevant market area farmers and grain-elevator operators frequently bought and sold beans by the bin.

From that offer of proof, defendants contend (1) that a jury issue arose as to whether a bin of beans is a commercial unit within the meaning of Minn. St. 336.2—105(6),[13] and (2) that acceptance of any part of the bin by the buyer constitutes acceptance of the entire bin within the meaning of Minn. St. 336.2—606(2).[14] The question then arises whether defendants' position that the oral contract is taken out of the statute of frauds by Minn. St. 336.2—201(3)(c) [15] is tenable.

We need not reach that issue since under our reading of Minn. St. 336.2—201(3)(c) it is necessary that the goods "have been received and accepted" before avoidance of the statute of frauds is recognized. See, Johnston Jewels, Ltd. v. Leonard, 156 Conn. 75, 239 A. 2d 500 (1968). The evidence is conclusive that defendants actually received only 4,020 bushels of beans. As the part-performance exception to the statute of frauds requires that one have received all of the goods for which recovery is sought, defendants could not prevail even if they could prove that by accepting a part of the bin of beans, they accepted the whole.

### Individual Liability

We reach the issue of whether the trial court erred in entering judgment against Bruce Mitchell individually. Although the joint answer and counterclaim of the defendants denied that he was

---

[13] Minn. St. 336.2—105(6) provides: " 'Commercial unit' means such a unit of goods as by commercial usage is a single whole for purposes of sale and division of which materially impairs its character or value on the market or in use. A commercial unit may be a single article (as a machine) or a set of articles (as a suite of furniture or an assortment of sizes) or a quantity (as a bale, gross, or carload) or any other unit treated in use or in the relevant market as a single whole."

[14] Minn. St. 336.2—606(2) provides: "Acceptance of a part of any commercial unit is acceptance of that entire unit."

[15] Minn. St. 336.2—201(3)(c) provides: ."A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable * * * (c) with respect to goods for which payment has been made and accepted or which have been received and accepted (section 336.2—606)."

a party to the contract and alleged that he was at all relevant times acting as agent for the corporate defendant, the agency issue apparently dropped out of the case at the time of the pretrial conference.

Because the issue was not reserved in the pretrial order or at any subsequent time and because there was no offer of proof nor any argument regarding that point, the record is inadequate to determine on appeal whether the agency issue was properly decided or whether there was a genuine issue of material fact. Defendant's failure to make a proper record precludes him from raising this issue on appeal.

Affirmed.