William J. ZIMPRICH, et al.,
Appellants,

v.

STRATFORD HOMES, INC.,
Respondent,

Associated Lumber Marts, Inc., et al., Defendants.

No. C2-89-1517.

Court of Appeals of Minnesota.

April 3, 1990.

Stephen J. Smith, Joseph A. Bueltel, Smith & Tollefson, Owatonna, for William J. Zimprich, et al.

Helen A. Winder, Jerome B. Abrams, Austin & Abrams, Minneapolis, for Stratford Homes, Inc.

Considered and decided by PARKER, P.J., and FORSBERG and NORTON, JJ.

## OPINION

FORSBERG, Judge.

Appellants William J. Zimprich and Judy A. Zimprich brought this action for injuries allegedly resulting from exposure to formaldehyde fumes found in their manufactured home. This appeal is from a grant of summary judgment to respondent Stratford Homes, Inc. (Stratford), the manufacturer of the home. We reverse the grant of summary judgment as to the claims of negligence and strict liability, but affirm as to the claims of violation of statutory warning requirements and violation of the Magnuson–Moss Warranty Act.

## FACTS

Stratford manufactured appellant's home in 1975. In March 1978, appellants purchased the home from Highlight Homes of Owatonna, Inc. (Highlight) as a pre-owned home with a one-year limited warranty.

The home was altered and remodeled several times. In 1979, a wood burning barrel stove was installed in the basement. In 1982, flooring was replaced with particle board; a cupboard was installed; a closet was enlarged; the hot water heater was moved to the basement; paneling was added; and a new linoleum floor was installed.

Appellants claim their health problems began in 1979. The most severe symptoms appeared after the 1982 remodeling, and included irritability, severe headaches, sore throats, stomach problems, and respiratory problems.

In 1983, air levels in the home were tested for formaldehyde. A March 12 report indicated a formaldehyde concentration in the air of .08 to .095 parts per million (ppm). A June 22 test revealed formaldehyde levels ranging from .06 to .08 ppm. A July 28 test revealed levels ranging from .04 to .09 ppm. None of these tests revealed levels exceeding 0.4 ppm, the current maximum indoor air level allowed by Minn.Stat. § 144.495 (1988). One report did note formaldehyde "may be perceived as an odor at 0.073 ppm, [and] produces cough, eye irritation, nose and throat irritation and headaches."

A March 1983 test of building materials including ceiling tile, subflooring, and paneling failed to provide conclusive results regarding any formaldehyde release. During a second test, a sample of wall insulation described by the report as "paper faced fiber glass" tested negative. However, samples of "both old and new" paneling and particle board tested positive for formaldehyde, suggesting "that one of the sources of the formaldehyde levels found in [appellants'] home may have been the paneling, or the subflooring."

Appellants abandoned the home in April 1983.

On February 27, 1984, appellants brought this action against Stratford, Highlight, and a number of other parties involved in the 1982 remodeling of the home. The amended complaint sought recovery under various theories, including negligence, strict liability, violation of statutory warning requirements, and violation of the Magnuson–Moss Warranty Act.

In October 1984, insulation, paneling, and particle board were removed from the home. Appellants returned to the home for a short period of time, but soon moved to Oklahoma.

Stratford moved for summary judgment. In support of that motion, Stratford filed an affidavit from its president, Dean Weiland, and copies of the 1983 tests of air and building materials. Weiland's affidavit stated at the time the home was manufactured, Stratford used construction methods and materials common to the industry. The affidavit further stated the home met or exceeded Wisconsin and Minnesota building codes, carried a HUD inspection approval number, and passed a third-party independent inspection.

In opposition to Stratford's motion, appellants filed correspondence from two of their treating physicians; copies of the 1983 tests; and correspondence and an affidavit from James R. McDonagh, a consulting engineer. Internist Philip F. Wichmann indicated he had been treating Judy Zimprich since January 1983, and one of his colleagues had been treating her since November 1982. In Wichmann's opinion, Judy Zimprich's illnesses "definitely were * * * contributed to by their continued exposure in their home to formaldehyde vapors." Wichmann further noted the family's symptoms "rapidly disappeared" after they moved out of the home.

Allergist Vijay K. Sabnis saw appellants and their children in May 1983 and in June 1983. They all showed sensitivity to formaldehyde, dust, and molds. Sabnis concluded: "There was enough formaldehyde in the house to cause symptoms in a sensitive person. However, formaldehyde is only one of the many allergies that these family members have."

McDonagh had reviewed court documents, inspected the home, and interviewed two witnesses. Although the original wall insulation had been removed from the home during the 1984 remodeling, the two witnesses described it as "white fluffy stuff" or a substance you could "press between your fingers." Based on this description and the fact there were no other products on the market in 1975 which could have been similarly described, McDonagh concluded the original insulation was "urea-formaldehyde foam." McDonagh concluded the "1982 remodeling did not have a measurable effect on the off gasing of formaldehyde." He further concluded "[t]he foam was a contributor to formaldehyde gas in the home from 1978 through 1984," and that "[o]ther products, including but not limited to, cabinets, paneling, particle board, and carpeting used in the original construction of the home contained urea-formaldehyde as a component and contributed to this off gasing."

This appeal followed the trial court's grant of summary judgment to Stratford.

## ISSUE

Did the trial court err in granting summary judgment on appellants' claims?

## ANALYSIS

The parties essentially admit this appeal is from a partial final judgment because judgments dismissing all the defendants have not been entered. We generally require entry of a final judgment dismissing all other claims and parties before we will decide an appeal. *Olmscheid v. Minneapolis Northfield & Southern Railway*, 425 N.W.2d 312, 313 (Minn.Ct.App.1988). However, the parties to this appeal agree that all other parties have either settled or been dismissed. In the interests of judicial economy, we therefore extend review.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Minn.R.Civ.P.

56.03. The initial burden of proof is on the moving party to show no genuine issues of material fact exist. *Grondahl v. Bulluck,* 318 N.W.2d 240, 242 (Minn.1982). The non-moving party has the benefit of that view of the evidence which is most favorable to him, and the existence of doubts about the basis or potential outcome of a case must not influence a trial court's evaluation of the evidence. *Moe v. Springfield Milling Corp.,* 394 N.W.2d 582, 585 (Minn.Ct.App. 1986), *pet. for rev. denied* (Minn. Dec. 17, 1986).

■ Stratford argues summary judgment was appropriate because appellants failed to present any evidence linking Stratford to their injuries. However, negligence issues, such as proximate cause, are most often questions of fact for the jury and can rarely be disposed of on a motion for summary judgment. *McCuller v. Workson,* 248 Minn. 44, 47, 78 N.W.2d 340, 342 (1956).

In support of its position, Stratford points to the 1983 test results which it claims prove the home did not contain dangerous or hazardous formaldehyde levels. The fact the formaldehyde levels did not exceed maximum exposure levels set by the state, however, is not proof those levels did not cause appellants' injuries. Minn. Stat. §§ 325F.181 and 144.495 (1988) provide indoor air levels of formaldehyde may not exceed 0.4 ppm. These statutes were not in effect when appellants' home was manufactured in 1978 and, in any event, should not be read to imply any level below 0.4 ppm is harmless.

Stratford further emphasizes summary judgment was appropriate because it complied with all applicable codes at the time the home was manufactured. Compliance with industry standards is not conclusive proof on the question of whether a manufacturer exercised reasonable care. 4 Minnesota Practice, CIV.JIG, 101.1 (3d ed. 1986). While observance of a custom may be admissible to show what a reasonably prudent person would do under the same or similar circumstances, it does not necessarily amount to a finding of due care. *Schmidt v. Beninga,* 285 Minn. 477, 489–90, 173 N.W.2d 401, 408 (1970).

Stratford finally emphasizes summary judgment was appropriate because appellants are overly sensitive to their environment and caused their own injuries by smoking and by performing extensive remodeling on the home in 1982. While these factors may have contributed to appellants' injuries, they are not conclusive or undisputed. To the contrary, these factors illustrate genuine issues exist as to the cause of appellants' injuries which preclude summary judgment.

Even assuming the burden shifted to appellants, examination of the record shows sufficient evidence was submitted to present a fact issue on the question of causation. Appellants' treating physicians believed their symptoms were caused by continued exposure to formaldehyde fumes in their home. McDonagh, appellants' consulting engineer, stated the 1982 remodeling did not have a "measurable effect" on the release of formaldehyde. He further concluded a formaldehyde-based insulation was present in the home from 1978 through 1984. McDonagh determined this insulation, along with other materials such as paneling, contributed to the release of formaldehyde. While one of the 1983 tests of building materials tends to contradict McDonagh's assumption that the wall insulation was urea formaldehyde, the other test did show positive traces of formaldehyde in paneling and subflooring.

Thus, fact issues exist as to whether materials used in the manufacture of the home contained formaldehyde and whether those materials caused appellants' injuries. Contrary to the trial court's conclusion, appellants have provided sufficient evidence to show there may be a connection between the home as manufactured and their injuries. This causal connection is sufficient to allow appellants' claims of negligence and strict liability to proceed. *See Moe,* 394 N.W.2d at 585–86. We therefore reverse the grant of summary judgment on those claims.

■ We conclude the trial court properly granted summary judgment as to the claim of violation of the Magnuson–Moss Warranty Act. The Act applies to certain con-

sumer products, but not to realty or to building materials incorporated into the structure of a dwelling at the time of sale. 16 C.F.R. § 700.1(e) (1989). This case involves the sale of a consumer dwelling, not the sale of separate building materials and component parts. As such, the trial court properly concluded the Act does not apply.

 We similarly conclude the trial court properly granted summary judgment on the claim of violation of statutory warning requirements. Current Minnesota law requires a manufacturer provide a written disclosure when selling a manufactured home containing urea formaldehyde. Minn.Stat. § 325F.18, subd. 1(b) (1988). In addition, building materials containing urea formaldehyde which are used in manufactured homes must meet certain product standards, certification, and labeling requirements. Minn.Stat. §§ 144.495 and 325F.181 (1988). These statutory requirements, however, were not in effect at the time appellants' home was manufactured in 1978.

While appellants concede Minnesota law did not require any warning in this case, they insist Stratford had a duty to warn under common law. Because appellants' claim of failure to warn is related to and not really separate from their negligence and strict liability claims, it may be considered in connection with those claims. *See Germann v. F.L. Smithe Machine Co.*, 395 N.W.2d 922, 926 n. 4 (Minn.1986) (failure to warn liability is based upon principles of negligence); 4 Minnesota Practice, CIV. JIG, 119 (3d ed. 1986 & Supp.1988).

Finally, appellants have filed two motions with this court. The first is for summary reversal of the judgment based on Stratford's failure to pay requisite filing fees.

 A properly filed motion is not a jurisdictional prerequisite to a grant of summary judgment. A trial court may sua sponte grant summary judgment as long as it affords the adverse party an opportunity to oppose such an action. *Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. 275, 281, 230 N.W.2d 588, 592 (1975).

Appellants' second motion is to strike all or portions of Stratford's brief. The challenged portions do not appear to be prejudicial to appellants' case. In any event, those portions were unnecessary to our decision and have not been considered. Both motions are therefore denied.

## DECISION

Affirmed in part, reversed in part.