**In re DIEGO'S INC., a California Corporation, Debtor.**

**Richard M. KIPPERMAN, Chapter 7 Trustee, Plaintiff–Appellee,**

v.

**Tom E. DIXSON, individually and as Trustee of the Tom E. Dixson Trust UTD October 16, 1986, Defendant–Appellant.**

**No. 95–55562.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1996.

Decided July 5, 1996.

---

1. *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Mark Steven Kessler and Evangeline J. Larson, Kessler & Larson, San Diego, California, for defendant-appellant.

Michael D. Breslauer, Solomon, Ward, Seidenwurm & Smith, San Diego, California, Troy Zander, Gray, Cary, Ware & Freidenrich, San Diego, California, for plaintiff-appellee.

Before WIGGINS, THOMPSON and TROTT, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

The bankruptcy court granted summary judgment in favor of Richard M. Kipperman, as Trustee of Diego's, Inc., in the Trustee's action for breach of contract against Tom E. Dixson, individually and as Trustee of the Tom E. Dixson Trust UTD October 16, 1986 (Dixson). The Trustee sued Dixson for reneging on an oral contract to buy a restaurant. The contract included the restaurant's real and personal property and its liquor license. The bankruptcy court rejected Dixson's defenses that the statute of frauds precluded enforcement of the contract, that the contract was illegal, and that it was dependent upon a condition precedent which failed.

Dixson appealed to the district court. That court affirmed and this appeal followed. We have jurisdiction under 28 U.S.C. § 158(d), and we affirm.

I .

Diego's Inc., owner-operator of Diego's restaurant in Pacific Beach, California (Diego's), filed a voluntary Chapter 11 petition in 1991. In January 1992, the Debtor brought a motion before the bankruptcy court to sell Diego's. The sale included real estate as well as the restaurant's personal property.

On March 30 and April 7, 1992, the bankruptcy court held hearings on the motion to sell Diego's at which several offers to purchase were considered by the court. Macam Enterprises made a cash offer to buy Diego's for $965,000. Pierre–Debbas Enterprises, an unsecured creditor of Diego's, bid to assume management temporarily to return Diego's to profitability with the goal of resale within a few months. The Pierre–Debbas offer included a guaranteed resale price of $1.2 million.

At the April 7, 1992 hearing, Dixson, who had no previous experience in the restaurant business, made an oral offer to buy Diego's for $1.5 million, with $1.17 million in cash and a $330,000 promissory note with a term of five years. The Trustee orally accepted Dixson's bid and the bankruptcy court authorized the sale.

At the same hearing, Dixson requested the bankruptcy court to order a transfer of Diego's liquor license. The bankruptcy court informed Dixson that it was incapable of ordering such a transfer and that Dixson would have to file an application with the California Department of Alcoholic Beverage Control (ABC) for a transfer or for a temporary license. Upon learning that the license would not be immediately available, Dixson did not try to withdraw his offer nor did he raise any objection to the sale. Instead, he requested the court to leave the escrow closing date "somewhat open" so that he could make any necessary applications.

Later that day, Dixson deposited $1.17 million in an escrow account for Diego's. The next day, Dixson assumed possession of the restaurant, held a general meeting with the managers and employees at which he introduced himself as the new owner, rekeyed the locks, and reset the safe combination.

One week later, on April 14, 1992, Dixson and the Trustee entered into an Interim Operating Agreement allowing Dixson to operate, manage, and assume the risk of loss for Diego's pending the close of escrow. Soon thereafter, Dixson was informed by Harold Brewer, a consultant and former ABC employee, that the Interim Operating Agreement violated ABC regulations by allowing Dixson to reap the profits of a liquor license without being licensed by the ABC.

Dixson did not inform the Trustee of this problem nor make any effort to renegotiate or amend the Interim Operating Agreement. Nor did he apply for a transfer of Diego's liquor license or attempt to obtain a temporary operating permit from the ABC. Although he knew that he could obtain an expedited meeting with the ABC to seek a temporary permit, he never tried to arrange such a meeting.

On April 17, 1992, the head manager of Diego's threatened to quit and take all the managers with him unless Dixson raised their salaries. Later that day, ten days after making his offer at the bankruptcy hearing,

Dixson ceased all operations and repudiated his contract to buy Diego's.

On November 17, 1992, the Trustee sold Diego's to a third party for $750,000. The estate incurred attorney fees for the resale in the amount of $31,916.50.

The Trustee filed a complaint in the bankruptcy court for breach of contract against Dixson. Dixson answered and the trustee moved for summary judgment. The bankruptcy court granted the Trustee's summary judgment motion and awarded the Trustee $811,916.50. The district court affirmed. Dixson appeals.

## II

We review de novo the district court's decision on an appeal from the bankruptcy court. *In re Daily,* 47 F.3d 365, 367 (9th Cir.1995). We "independently review the bankruptcy court's decision and do not give deference to the district court's determinations." *In re Weisman,* 5 F.3d 417, 419 (9th Cir.1993). In reviewing summary judgment, we determine whether the court correctly applied the law and, viewing the evidence in the light most favorable to the nonmoving party, whether any genuine issue of material fact exists. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

## III

Dixson argues the bankruptcy court erred in holding that he is estopped from relying on the statute of frauds as a defense to the Trustee's breach of contract action. He also contends the contract is illegal and therefore unenforceable. Finally, he argues the contract was subject to the condition precedent of his immediate receipt of Diego's liquor license, and that when this condition failed he was justified in repudiating the contract. We consider each argument in turn.

### A. Estoppel

The contract falls within the general scope of California's statute of frauds because it includes the sale of real property and was not reduced to writing and signed by Dixson, the party to be charged. Cal. Civ. Code § 1624(c). A party may be estopped, however, from relying on the statute of frauds.

In *Isaac v. A & B Loan Co.,* 201 Cal. App.3d 307, 313, 247 Cal.Rptr. 104 (1988), the California Court of Appeal explained:

> The doctrine of estoppel to assert the statute of frauds applies where unconscionable injury would result from denying enforcement of the oral contract after one party has been induced by the other seriously to change his position in reliance on the contract....

The Trustee seriously changed his position to his detriment by relying on the oral contract with Dixson. Induced by Dixson's offer, the Trustee accepted it and turned down two other purchase offers.[1] The Trustee was eventually forced to resell the restaurant at a significant loss.

Under California law, estoppel has been applied in analogous situations against purchasers who renege on oral contracts and cause sellers to forsake other sale opportunities and resell later at a loss. *See, e.g., Mosekian v. Davis Canning Co.,* 229 Cal. App.2d 118, 40 Cal.Rptr. 157 (1964); *Moore v. Day,* 123 Cal.App.2d 134, 266 P.2d 51 (1954).

In *Mosekian,* for example, the court held that estoppel applied to prevent a canning company from asserting the statute of frauds in a farmer's action for breach of an oral contract to buy peaches. *Mosekian,* 229 Cal. App.2d at 123, 40 Cal.Rptr. 157. The canning company induced the farmer not to search for other buyers for his fruit, and

---

1. Dixson argues the estoppel doctrine requires the Trustee to be induced not by the oral contract, but by post-contract representations. We disagree. *Isaac* provides for estoppel where the plaintiff has "reli[ed] on the contract." *Isaac,* 201 Cal.App.3d at 313, 247 Cal.Rptr. 104. Moreover, California courts have applied estoppel where the plaintiff relied upon the oral contract, not post-contract representations. *See Juran v. Epstein,* 23 Cal.App.4th 882, 28 Cal.Rptr.2d 588 (1994). Post-contract representations can nevertheless provide an additional basis for estoppel. *See Kaye v. Melzer,* 87 Cal.App.2d 299, 197 P.2d 50 (1948).

when the company reneged the farmer was forced to resell his crop at a loss. *Id.*[2]

The Trustee's loss fits within this line of cases: he gave up other offers in reliance upon the oral contract and, if the contract is not enforced, will suffer a loss of fifty percent of the contractual price. This is unconscionable injury within the meaning of California estoppel law. *Allied Grape Growers v. Bronco Wine Co.,* 203 Cal.App.3d 432, 444, 249 Cal.Rptr. 872 (1988).

Dixson's reliance on *Oren Realty & Development Co. v. Superior Court,* 91 Cal.App.3d 229, 154 Cal.Rptr. 97 (1979), and *Carlson v. Richardson,* 267 Cal.App.2d 204, 72 Cal.Rptr. 769 (1968), is misplaced. These cases hold that loss of the contractual bargain alone is not a serious change of position. Here, the Trustee lost not only the contractual bargain with Dixson, he also lost other opportunities to sell Diego's to Macam and Pierre–Debbas.

Dixson argues the Macam and Pierre–Debbas offers were not "lost" because the Trustee could not have accepted either offer. With regard to the Pierre–Debbas offer, Dixson contends it was not an offer to purchase and thus was not a comparable opportunity. While Dixson is correct that the Pierre–Debbas offer was not a simple purchase offer, it did include a guaranteed sales price of $1.2 million within a few months. This was a legitimate and valuable opportunity that the Trustee was induced not to accept.

The Trustee also lost the opportunity to accept the all-cash Macam offer to buy Diego's for $965,000. Although Dixson contends the creditors would not have approved acceptance of the Macam offer as required under 11 U.S.C. § 363(f)(2), the record does not support this argument. The only creditor concern reflected in the record pertained to the amount of the purchase price offered by Macam. The creditors, however, eventually approved the sale of Diego's for $750,000, a substantially lower price, just a few months later. This suggests the creditors ultimately would have approved the Macam offer of $965,000.

Because the Trustee seriously changed his position to his detriment in reliance on the oral contract with Dixson, the bankruptcy court was correct in holding that Dixson was estopped from relying on the statute of frauds as a defense in the Trustee's breach of contract action.[3]

## B. Illegality

■ Dixson argues that even if he cannot rely on the statute of frauds as a defense, the contract is illegal and unenforceable. He contends he could not legally operate Diego's in accordance with the terms of the Interim Operating Agreement without being licensed by the ABC, and the Interim Operating Agreement is part of the sales contract.

Assuming *arguendo* that the Interim Operating Agreement was illegal and unenforceable, that agreement's illegality does not justify Dixson's repudiation of the entire sale. As the district court noted, "the interim agreement is not the contract in issue; rather, it was merely a means to facilitate [Dixson's] desire to manage Diego's pending the close of escrow." The contract at issue was the oral contract authorized by the bankruptcy court on April 7, 1992. This was the contract for the sale of Diego's and there is nothing to indicate *this* contract was illegal.

■ Under California law, a lawful contract will be enforced even when a collateral agreement is illegal. *Pitts v. Highland Construction Co.,* 115 Cal.App.2d 206, 212, 252 P.2d 14 (1953). Therefore, even assuming the illegality of the Interim Operating Agreement, Dixson was still bound by the oral contract of April 7, 1992 and was not justified

---

**2.** *See also Monarco v. Lo Greco,* 35 Cal.2d 621, 623–24, 220 P.2d 737 (1950) (applying estoppel against promisor seller of land where promisee purchaser "gave up any opportunity to accumulate property of his own and devoted his life to ... the family venture"); *Goldstein v. McNeil,* 122 Cal.App.2d 608, 265 P.2d 113 (1954) (estoppel applies against purchaser who reneged on oral agreement to purchase automobiles).

**3.** Our holding that Dixson is barred from relying on the statute of frauds defense on the ground of estoppel renders it unnecessary for us to rule on the Trustee's alternative argument, that the statute of frauds is inapplicable to the sale of Diego's because the sale was a "judicial sale" within an exception to the statute. *See Halleck v. Guy,* 9 Cal. 181 (1858).

in repudiating that contract on the ground of illegality.

## C. Condition Precedent

 Dixson argues the contract was conditioned upon his "immediate operation and control" of Diego's, which included the immediate ability to sell liquor. Because it was against ABC regulations for Dixson to sell liquor without a license, the condition went unfulfilled and, he contends, this justified his repudiation of the contract.

We agree with the bankruptcy court that Dixson's immediate ability to sell liquor was not a condition precedent to the contract. At the hearing when the bankruptcy court authorized the sale of Diego's to Dixson, the court informed him it was incapable of ordering a transfer of the liquor license. Dixson knew at that time the license would not be immediately available, and he would have to seek ABC approval for a transfer of the license or obtain a temporary operating permit. He did not object or try to withdraw his offer. To the contrary, he sought a "somewhat open" time for the escrow closing date to enable him to make the necessary applications.

AFFIRMED.